1   WILLIAM A. MOLINSKI (SBN 145186)
    wmolinski@orrick.com
2   ORRICK, HERRINGTON & SUTCLIFFE LLP
    777 South Figueroa Street
3   Suite 3200
    Los Angeles, CA 90017
4   Telephone: (213) 629-2020
    Facsimile: (213) 612-2499
5
    GREGORY D. BEAMAN (admitted *pro hac vice*)
6   gbeaman@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
7   Orrick Building at Columbia Center
    1152 15th Street, N.W.
8   Washington, D.C.  20005
    Telephone: (202) 339-8400
9   Facsimile: (202) 339-8500

10  Attorneys for Defendant Life360, Inc.

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

15  TERRY COUR II, individually and on behalf      Case No. 3:16-cv-00805-TEH
    of all others similarly situated,
16                                                 **DEFENDANT'S NOTICE OF MOTION,**
                    Plaintiff,                      **MOTION TO DISMISS THE FIRST**
17                                                 **AMENDED COMPLAINT OR, IN THE**
            v.                                     **ALTERNATIVE, FOR SUMMARY**
18                                                 **JUDGMENT, AND MEMORANDUM**
    LIFE360, INC., a Delaware corporation,         **OF POINTS AND AUTHORITIES IN**
19                                                 **SUPPORT THEREOF**
                    Defendant.
20                                                 **CLASS ACTION**

21
                                                   **Hearing Date:   July 11, 2016**
22                                                 **Time:           10:00 a.m.**
                                                   **Courtroom:      2**
23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ...................................................................... 3

FACTUAL BACKGROUND ................................................................................................... 3

      A.     Background of Life360 and the Life360 App ........................................................ 3

      B.     The Life360 App's User-Initiated Invitational Text Message Process ................... 4

      C.     The Text Message Invitation That Plaintiff Received From His Own Family Member ........................................................................................................ 5

      D.     Procedural History ............................................................................................... 7

ARGUMENT ............................................................................................................................ 8

I.       PLAINTIFF'S TCPA CLAIM FAILS AS A MATTER OF LAW ................................ 9

      A.     Plaintiff Has No Standing to Assert a TCPA Claim ........................................... 10

      B.     The Life360 App Did Not "Make" the Invitational Text Message ....................... 12

      C.     The Life360 App Does Not Use an ATDS ........................................................... 15

II.      PLAINTIFF'S UCL CLAIM FAILS AS A MATTER OF LAW .................................. 17

III.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND OR, ALTERNATIVELY, SUMMARY JUDGMENT SHOULD BE ENTERED FOR LIFE360 .................................................................................................. 20

CONCLUSION ....................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. AT&T Mobility, LLC,*
816 F. Supp. 2d 1077 (W.D. Wash. 2011) .............................................................21

*Am. Games, Inc. v. Trade Prods., Inc.,*
142 F.3d 1164 (9th Cir. 1998) ..............................................................................8

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ..............................................................................................9

*AT&T Mobility v. Concepcion,*
563 U.S. 333 (2011) ............................................................................................21

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ..............................................................................................9

*Campbell-Ewald Co. v. Gomez,*
136 S.Ct. 663 (2016) .............................................................................................9

*Cannon v. Wells Fargo Bank N.A.,*
917 F. Supp. 2d 1025 (N.D. Cal. 2013) ...............................................................18

*Cayanan v. Citi Holdings, Inc.,*
928 F. Supp. 2d 1182 (S.D. Cal. 2013) ...............................................................21

*Cervantes v. Countrywide Home Loans, Inc.,*
656 F.3d 1034 (9th Cir. 2011)..............................................................................20

*Chevron v. Nat'l Res. Def. Council, Inc.,*
467 U.S. 837, (1984) ...........................................................................................13

*Clothesrigger, Inc. v. GTE Corp.,*
191 Cal. App. 3d 605 (4th Dist. 1987) ................................................................17

*Couser v. Comenity Bank,*
125 F. Supp. 3d 1034 (S.D. Cal. 2015) ...............................................................21

*Daniel v. Five Stars Loyalty, Inc.*
Case No. 15-cv-03546-WHO, 2015 WL 7454260 (N.D. Cal. Nov. 24, 2015).........13

*Daniels-Hall v. Nat'l Educ. Ass'n,*
629 F.3d 992 (9th Cir. 2010)...........................................................................6, 21

*Fife v. Facebook, Inc.,*
No. C 12-1894 CW, 2013 WL 6734239 (N.D. Cal. Dec. 20, 2013)..................18, 19

*Frezza v. Google, Inc.*,
  No. 5:12-cv-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013)...............................18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ..........................................................................................................20

*Glauser v. GroupMe, Inc.*,
  No. C 11-2584 PJH, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015) ...................................2, 15, 16

*Gold v. Lumber Liquidators, Inc.*,
  Case No. 14-cv-05373-TEH, 2015 WL 7888906 (N.D. Cal. Nov. 30, 2015) ...........................8

*Huricks v. Shopkick, Inc.*,
  No. C-14-2464 MMC, 2015 WL 5013299 (N.D. Cal. Aug. 24, 2015)..............................14, 15

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) .................................................................................8

*Kilgore v. KeyBank, Nat'l Ass'n*,
  718 F.3d 1052 (9th Cir. 2013)..............................................................................................21

*London v. New Albertson's, Inc.*,
  No. 08-CV-1173 H(CAB), 2008 WL 4492642 (S.D. Cal. Sept. 30, 2008) ............................20

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..........................................................................................................10

*MacKinnon v. Logitech Inc.*,
  Case No. 15-cv-05231-TEH, 2016 WL 541068 (N.D. Cal. Feb. 11, 2016) ...........................18

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011)..............................................................................................12

*Maynard v. Wells Fargo Bank, N.A.*,
  No. 12CV1435 AJB (JMA), 2012 WL 4898021 (S.D. Cal. Oct. 15, 2012) ...........................20

*McGough v. Wells Fargo Bank, N.A.*,
  No. C12-0050 TEH, 2012 WL 5199411 (N.D. Cal. Oct. 22, 2012) ........................................17

*McKenna v. WhisperText*,
  No. 5:14-cv-00424-PSG, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) ........................ *passim*

*Meyer v. Portfolio Recovery Assocs., LLC*,
  707 F.3d 1036 (9th Cir. 2012)................................................................................................9

*Peck v. Cingular Wireless, LLC*,
  535 F.3d 1053 (9th Cir. 2008)..............................................................................................13

*Pietzak v. Microsoft Corp.*,
  Case No. CV 15-5527-R, 2015 WL 7888408 (C.D. Cal. Nov. 17, 2015) ...................17, 19, 20

*Reniger v. Hyundai Motor Am.*,
 122 F. Supp. 3d 888 (N.D. Cal. 2015) ......................................................................8

*Robins v. Spokeo, Inc.*,
 742 F.3d 409 (9th Cir. 2014)....................................................................................11

*Rubio v. Capital One Bank*,
 613 F.3d 1195 (9th Cir. 2010)..................................................................................18

*Safe Air for Everyone v. Meyer*,
 373 F.3d 1035 (9th Cir. 2004)..................................................................................21

*Satterfield v. Simon & Schuster, Inc.*,
 569 F.3d 946 (9th Cir. 2009)...............................................................................9, 13

*Sepehry-Fard v. Dep't Stores Nat'l Bank*,
 15 F. Supp. 3d 984 (N.D. Cal. 2014) .......................................................................17

*Sepehry-Fard v. MB Fin. Servs.*,
 Case No. 13-cv-02784-BLF, 2014 WL 2191994 (N.D. Cal. May 23, 2014) .........17

*Sepehry-Fard v. MB Fin. Servs.*,
 Case No. 13-cv-02784-BLF, 2015 WL 903364 (N.D. Cal. Mar. 2, 2015) ..............18

*Shappell v. Sun Life Assur. Co.*,
 No. 2:10-cv-03020-MCE-EFB, 2011 WL 2070405 (E.D. Cal. May 23, 2011).......21

*Sherman v. RMH, LLC*,
 No. 13-cv-1986-WQH-WMC, 2014 WL 30318 (S.D. Cal. Jan. 2, 2014) ...............21

*Spokeo, Inc. v. Robins*,
 No. 13-1339, 578 U.S. -- 2016 WL 2842447 (May 16, 2016)...................1, 2, 10, 11

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir. 2001)...............................................................................9, 16

*Steckman v. Hart Brewing, Inc.*,
 143 F.3d 1293 (9th Cir. 1998)..............................................................................9, 20

*Steel Co. v. Citizens for a Better Envt.*,
 523 U.S. 83 (1998) .....................................................................................................8

*Sullivan v. Oracle Corp.*,
 51 Cal. 4th 1191 (2011) ...........................................................................................17

*Sullivan v. Oracle Corp.*,
 662 F.3d 1265 (9th Cir. 2011)..................................................................................17

*TrafficSchool.com, Inc. v. Edriver Inc.*,
 653 F.3d 820 (9th Cir. 2011)....................................................................................18

*York v. Bank of Am.*,
   Case No. 14-cv-02471-RS, 2015 WL 6152478 (N.D. Cal. Oct. 20, 2015) .............................20

**U.S. Constitution**

Article III.................................................................................................................. *passim*

**Statutes**

28 U.S.C. § 1927 ......................................................................................................................7

47 U.S.C. § 227(a)(1) ..........................................................................................................9, 15

47 U.S.C. § 227(b)(1)(A) ..........................................................................................................12

47 U.S.C. § 227(b)(1)(A)(iii) ......................................................................................................9

47 U.S.C. § 227(b)(3)(B) ..........................................................................................................11

Cal. Bus. & Prof. Code § 17204 .................................................................................................18

California Unfair Competition Law ..................................................................................... *passim*

Fair Credit Reporting Act of 1970 ........................................................................................10, 11

Hobbs Act ..............................................................................................................................13

Telephone Consumer Protection Act ................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 8(a)(2) .................................................................................................................9

Fed. R. Civ. P. 12(b)(1) ................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ................................................................................................... *passim*

Fed. R. Civ. P. 56 ..................................................................................................................1, 3

Fed. R. Civ. P. 56(a) ................................................................................................1, 9, 15, 21

**Other Authorities**

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Protection
   Act of 1991, Report & Order*, CG Docket No. 02-278 (2003) ............................................9, 15

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Protection
   Act of 1991, Declaratory Ruling & Order*,
   CG Docket No. 02-278 (2015) ...................................................................12, 13, 15, 21

**NOTICE OF MOTION AND MOTION**

NOTICE IS HEREBY GIVEN that, on July 11, 2016 at 10:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Thelton E. Henderson, United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Life360, Inc. ("Life360") will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6), for an order dismissing Plaintiff Terry Cour II's ("Plaintiff") First Amended Complaint [ECF # 33] (the "Amended Complaint" or "AC") with prejudice, or, in the alternative, for an order granting summary judgment for Life360 pursuant to Federal Rule of Civil Procedure 56.  This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, the Declaration of Christopher Hulls ("Hulls Decl.") and accompanying exhibits, the Declaration of Gregory D. Beaman ("Beaman Decl.") and the exhibit thereto, the Request for Judicial Notice ("RJN") and accompanying exhibits, the argument of counsel, all pleadings, records and papers on file, and such other matters that may be presented to the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

Plaintiff's Amended Complaint asserts two claims against Life360 for violation of the Telephone Consumer Protection Act ("TCPA") and the California Unfair Competition Law ("UCL").  The sole purported basis for Plaintiff's claims is his allegation that he received an unsolicited text message—initiated by his own family member—inviting him to download, and join a private circle with his family members on, a popular smartphone application owned and operated by Life360 (the "Life360 App" or "App").  The Life360 App allows users to communicate with, and view the location of, friends and family who have also downloaded the App and joined the user's circle.  Plaintiff's claims fail as a matter of law and should be dismissed with prejudice for several reasons.

*First*, Plaintiff has no standing to bring a TCPA claim because he has not suffered a concrete injury in fact.  On May 16, 2016, the United States Supreme Court held in *Spokeo, Inc. v. Robins* that "Article III standing requires a concrete injury even in the context of a" violation of

a statute like the TCPA, which purports to grant litigants a private right of action and authorizes the award of statutory damages.  No. 13-1339, 578 U.S. --, 2016 WL2842447 at *7 (2016).  The Court in *Spokeo* emphasized that, for an injury to be "concrete," it must "actually exist."  *Id.*  Plaintiff has not alleged specific, concrete harm to him as a result of receiving the allegedly improper text message, and he cannot rely on conclusory, abstract and hypothetical allegations of harm to establish Article III standing.

*Second*, even assuming Plaintiff had standing to bring a TCPA claim, that claim fails because, as Plaintiff concedes, when a user downloads the Life360 App, the App does not automatically send text message invitations to the user's contacts.  Rather, the App requires the user herself to specifically select whom from her list of contacts, if anyone, she wishes to invite, and then affirmatively select to send that person an invitation.  This fact is fatal to Plaintiff's claims.  Indeed, several courts in this District have recently dismissed virtually identical TCPA claims for exactly this reason.  *See, e.g., McKenna v. WhisperText*, No. 5:14-cv-00424-PSG, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015); *Glauser v. GroupMe, Inc.*, No. C 11-2584 PJH, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015).  In *WhisperText*, for example, the court ruled that the plaintiff failed to state a plausible TCPA claim because: (i) the WhisperText application users, not WhisperText, were the initiators of the text message invitations at issue; and (ii) the Whisper application did not use an automated telephone dialing system ("ATDS") to send those text messages, as required to state a TCPA claim.  The same is true here.

Plaintiff's UCL claim also fails as a matter of law for several reasons.  *First*, it is premised on the exact same conduct as Plaintiff's TCPA claim, and therefore fails for the same reasons that his TCPA claim fails.  *Second*, Plaintiff has no standing to assert a UCL claim.  Out-of-state residents cannot bring a claim under the UCL when the alleged conduct did not occur in California, and Plaintiff—a resident of Michigan—does not allege that he received the invitational text message at issue in California.  That is because the text was sent to him by his own family member in Michigan and he received it in Michigan.  Moreover, to establish standing under the UCL, a plaintiff must allege that he suffered an economic loss caused by the defendant's statutory violation.  Plaintiff's conclusory, speculative and hypothetical allegations of

harm are insufficient as a matter of law to establish economic loss under the UCL.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiff's TCPA claim should be dismissed with prejudice under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiff has not alleged that he suffered a concrete injury in fact sufficient to establish Article III standing, but rather has alleged nothing other than a bare statutory violation and abstract, hypothetical, speculative and theoretical harm.

2.      Whether Plaintiff's TCPA claim should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim—or, alternatively, whether summary judgment should be granted for Life360 under Rule 56—because the Amended Complaint's factual allegations establish that:  (i) the Life360 App's users, not the App itself, initiate the text message invitations at issue; and (ii) the App does not use an ATDS to send invitational text messages.

3.      Whether Plaintiff's UCL claim should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim—or, alternatively, whether summary judgment should be granted for Life360 under Rule 56—because:  (i) it is premised on the exact same conduct as his deficient TCPA claim; (ii) Plaintiff is an out-of-state resident who did not receive the allegedly offending text message in California; and (iii) Plaintiff has failed to adequately allege that he suffered an economic loss that was caused by that text message.

**FACTUAL BACKGROUND**

**A.      Background of Life360 and the Life360 App**

Life360 operates the Family Locator smartphone application, or "app," used by over 50 million people, which helps families and friends stay in sync throughout their busy day.  *See* AC ¶ 14; *see also* Hulls Decl. ¶ 2.  The Life360 App—which is available for download free of charge on devices such as the iPhone, Android and Windows Phone—allows users to privately communicate with their circle of friends and family who have accepted their invitations to join the App, as well as send alerts to them and view their location on a private map.  *See id*.  Among its other valuable uses, the App helps give parents much needed peace of mind in knowing that their children have safely arrived at school or at any other destination, and allows family members and friends to directly communicate with and notify each other of their location in cases

1   of major disaster and emergency.  *See* Hulls Decl. ¶ 2.

2          **B.     The Life360 App's User-Initiated Invitational Text Message Process**

3          When a new user downloads the Life360 App, she is prompted to create an account by

4   providing her phone number and creating a user name and password.  *See* AC ¶ 15; *see also* Hulls

5   Decl. ¶ 4.  Once the user has created an account, she then must go through several steps in which

6   she is asked whether she wishes to grant the App permission to track her location and show her

7   the location of others on a private map.  *See* AC ¶¶ 16-18; *see also* Hulls Decl. ¶¶ 5-6.  Assuming

8   that the user selects "yes" to those questions, she is then asked to indicate whether she gives the

9   App permission to access her list of contacts in her smartphone's "address book."  *See* AC ¶ 18;

10  *see also* Hulls Decl. ¶¶ 6-7.

11         At this point, the user can select "Don't Allow" or "OK."  *See* AC ¶ 18; *see also* Hulls

12  Decl. ¶ 7.  If the user selects "OK," the App immediately displays a list of "recommended"

13  contacts whom Life360 believes the user is most likely to want to invite.  *See* AC ¶ 19; *see also*

14  Hulls Decl. ¶ 7.  On the same screen, the App also gives the user the option of scrolling through

15  her entire address book and selecting whom else, if anyone, she wishes to send an invitation to, in

16  addition to the recommended family members whom she has affirmatively confirmed she wishes

17  to invite.  *See* AC at Figure 4; *see also* Hulls Decl. ¶ 7.

18         At the top of the screen where users select whom, if anyone, they wish to invite, the text

19  "Add Member" appears.  *See* AC at Figure 4; *see also* Hulls Decl. ¶ 7.  While Plaintiff alleges

20  that Life360 uses this phrase to trick users into believing they are sending invitations to contacts

21  who have already downloaded the App (*see* AC ¶¶ 26-27), Plaintiff offers no factual basis for his

22  assumption that the phrase "Add Member" is intended to convey anything other than that, by

23  selecting to invite a particular contact, the user is choosing to add a family member or friend to

24  join the App and become a member of her circle.  Moreover, Plaintiff's suggestion that Life360

25  intends to trick users with the "Add Member" language is not only factually unsupported and

26  false, it also unreasonably assumes that users believe that every single one of their contacts has

27

28

already downloaded the App, including close family members whom they know have not.[1]

Obvious checkmarks appear next to each contact that the user has selected to send an invitation to, including any recommended family members that the user has confirmed she wants to invite.  *See* AC ¶ 19; *see also* Hulls Decl. ¶¶ 7-9.  The "Invite" button at the bottom of the screen also indicates the total number of contacts to whom the user has initially selected to send invitations.  *See* AC ¶ 19; *see also* Hulls Decl. ¶ 9.  If the user decides she no longer wishes to invite a particular contact, she may de-select that contact by pressing on the checkmark next to the contact's name, at which point the checkmark will disappear and the "Invite" button will indicate that one less invitation will be sent.  *See* AC ¶ 19; *see also* Hulls Decl. ¶ 8.[2]  Once the user is ready to send invitations to the contacts she has selected, she must then press the "Invite" button at the bottom of the screen, causing her invitations to be sent immediately to her desired contacts.  *See* AC ¶¶ 20-21; *see also* Hulls Decl. ¶¶ 9-10.

Without the user going through the numerous user-initiated steps described above and in the Amended Complaint, the Life360 App does not, cannot and will not send text message invitations to a user's contacts.  *See* Hulls Decl. ¶ 3.

**C.   The Text Message Invitation That Plaintiff Received From His Own Family Member**

Plaintiff alleges that he received an unsolicited text message from the Life360 App on February 13, 2016.  *See* AC ¶ 35.  Had Plaintiff clicked on the hyperlink included in the text message invitation within a reasonable amount of time after receiving it, he would have been taken to a landing page screen that identified his family member, JoBeth Cour, as the Life360 user that sent him the invitation to download the App and join the private Cour Family Circle.

---

[1] Moreover, many users likely have only the land line office number for certain of their contacts. The App is a mobile app only available for download on mobile smartphones.  *See* AC ¶ 14; *see also* Hulls Decl. ¶ 2.

[2] Plaintiff concedes that a user can de-select any of her contacts, including recommended contacts, whom she has initially selected to send an invitation to, but he suggests that the App somehow forces users to invite their contacts because, "at this point in the sign-up process, [Life360] only provides one obvious way forward through the 'Invite' button." AC ¶ 19.  That is untrue, as users may proceed without inviting any of their contacts to join the App by pressing the down arrow at the top left hand corner of the invitation screen.  *See* AC at Figure 5; *see also* Hulls Decl. ¶¶ 12-14.

1    *See* Hulls Decl. ¶¶ 11, 16.

2           At this point, JoBeth Cour's invitation to Plaintiff has expired, as reflected in the

3    screenshot below, which is the webpage one is taken to when one enters the hyperlink pictured in

4    Figures 7 and 12 of the Amended Complaint, which purport to show the text message invitation

5    that Plaintiff received on his iPhone.  *See* AC ¶ 35 & Figures 7, 12 (quoting text message stating:

6    "TJ, check this out!  lf360.co/i/g2a5iJaTB005.").  When entered into a web browser, the cited

7    hyperlink leads to the following page, which states "This Circle invitation is no longer valid.

8    **Please have your family invite you again**":

9

10

11                                

12

13

14

15

16

17   *See* Beaman Decl., Ex. 1 (full printout of above screenshot) (emphasis added).[3]

18          Thus, as the above screenshot makes clear, the text message invitation that Plaintiff

19   received was initiated by one of his contacts who had Plaintiff listed as "TJ" in her phone, *not*

20   automatically by Life360 using an ATDS.  *See id.*; *see also* Hulls Decl. ¶ 16.  In fact, the text

21   message invitation was initiated by one of Plaintiff's own family members in Michigan.  *See*

22   Hulls Decl. ¶ 16.[4]  Moreover, as the above screenshot shows, clicking on the hyperlink does not

23   ───────────────────
     [3] In ruling on this motion to dismiss, the Court may consider the contents of this hyperlinked
24   webpage because Plaintiff cites this webpage's address and relies on it in the Complaint.  *See
     Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  The Court may also take
25   judicial notice of the contents of this hyperlinked webpage.  *See* RJN ¶ 1.  Alternatively, if the
     Court treats this motion as one for summary judgment, the Court may consider this material.

26   [4] The Court may consider the contents of Paragraph 16 of (and Exhibit 12 to) the Hulls
     Declaration because the Complaint quotes, relies on and offers a screenshot of the text message
27   invitation that Plaintiff received on February 13, 2016 (AC ¶ 35 & Figures 7, 12), and the
     screenshot in Paragraph 16 of (and Exhibit 12 to) the Hulls Declaration is a record showing where
28   that text message was initiated from.  Alternatively, if the Court treats this motion as one for
     summary judgment under Rule 56(a), the Court may consider this material.

1    redirect the invitee to an app download screen, as Plaintiff incorrectly alleges (*see* AC ¶ 22).

2        **D.    Procedural History**

3        Plaintiff filed his initial Complaint on February 17, 2016, in which he alleged that Life360

4    is violating the TCPA because its App exclusively initiates invitational text messages without any

5    user involvement and sends those messages using an ATDS.  However, Plaintiff also conceded,

6    as he does in the Amended Complaint, that text messages are only sent to individuals whom the

7    user himself selects to send an invitation to.  For this reason and others, on April 21, 2016,

8    Life360 filed a Motion to Dismiss the Complaint or, in the alternative, for Summary Judgment

9    [ECF # 21] (the "First Motion to Dismiss") because, under established precedent from the Federal

10   Communications Commission ("FCC") and decisions of this District dismissing TCPA claims

11   based on virtually identical facts, the App does not violate the TCPA.  *See infra* at 12-17.

12       Around the same time, Life360 discovered that, ten days *before* Plaintiff even received the

13   allegedly offending text at issue, Plaintiff's counsel downloaded and tested the App themselves.

14   *See* Motion for Attorneys' Fees and Costs Pursuant to 28 U.S.C. § 1927 and/or the Court's

15   Inherent Authority [ECF # 31-10] ("Motion for Fees and Costs") at 2-3.  Based on their own

16   investigation, Plaintiff's counsel knew that, contrary to what was alleged in the Complaint, the

17   Life360 App does not exclusively initiate text messages without any user involvement.  *See id.* at

18   5.   Despite Life360's repeated efforts to explain to Plaintiff's counsel that the Complaint

19   contained misleading and inaccurate allegations, Plaintiff's counsel refused to withdraw the

20   Complaint, and thus Life360 was left with no choice but to file the Motion for Fees and Costs on

21   May 2, 2016.  Four days later, Plaintiff filed the Amended Complaint

22       Notably, the Amended Complaint removes the pivotal—and factually inaccurate—

23   allegation on which Plaintiff based his initial Complaint: that the text message invitation he

24   received was allegedly initiated and made solely and exclusively by Life360 without any user

25   involvement.[5]  Despite removing what was the lynchpin of his Complaint, Plaintiff attempts to

26   _____

27   [5] Although Life360 does not agree that the Amended Complaint cures the misleading and
     inaccurate allegations that Plaintiff's counsel knowingly included in the Complaint, or is
     otherwise a remedy for Plaintiff's counsel's questionable conduct in connection with the initiation
28   and maintenance of this lawsuit, Life360 withdrew its Motion for Fees and Costs on May 10,
     2016 [ECF # 34] because it was directed to a now-withdrawn complaint.

salvage his claims by adding a series of legally irrelevant allegations.[6]   The only remotely relevant, new information that the Amended Complaint offers is an explanation of how the Life360 App actually works, rather than strategic misrepresentations about how the App works to overcome a motion to dismiss, as was done in the initial Complaint.  Now that Plaintiff has been forced to accurately describe how the App works, it is even more abundantly clear that Plaintiff's claims fail as a matter of law.

## ARGUMENT

"'Article III of the Constitution limits the power of federal courts to deciding 'cases' and 'controversies.''"  *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1167 (9th Cir. 1998) (citation omitted).   "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit."  *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1053 (N.D. Cal. 2012) (citing *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 101 (1998)).   "In that event, the suit should be dismissed under Rule 12(b)(1)."  *Id.*; *see also Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 893 (N.D. Cal. 2015) ("Because Article III standing relates to the Court's subject-matter jurisdiction, it is properly raised on a Rule 12(b)(1) motion[.]"); *Gold v. Lumber Liquidators, Inc.*, Case No. 14-cv-05373-TEH, 2015 WL 7888906, at *2 (N.D. Cal. Nov. 30, 2015) ("Dismissal is appropriate under [Rule 12(b)(1)] when a court lacks subject matter jurisdiction because a plaintiff lacks Article III standing.") (Henderson, J.).

A motion to dismiss should also be granted where, as here, a complaint fails to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  Although a complaint

---

[6] These additional "facts" are not only factually and legally irrelevant, they are also simply wrong.  For example, Plaintiff alleges that Life360 also sends emails to individuals invited by users, even though the TCPA has nothing to do with email communications.  *See* AC ¶¶ 25-26.  Plaintiff also alleges that: (i) Life360 users are effectively forced to invite their contacts if they wish to use the App, even though users are free to use the App without inviting anyone (*see* Hulls Decl. ¶¶ 12-14); (ii) Life360 alone has control over the timing of when text message invitations are sent, even though Plaintiff and his counsel know that a user's text message invitations can only be sent after the user presses the "Invite" button, after which they are sent immediately per the user's request (*see supra* at 7; *infra* at 15); and (iii) Life360 designed the App to trick users into believing they were inviting people who had already downloaded the App, which ignores that the App's stated purpose is to enable users to instantaneously communicate with their family *members* and other *members* of their circles of friends, and assumes, contrary to fact, that all users would believe that all of their contacts have already downloaded the App (*see supra* at 4 & n.1).

need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), satisfying this standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, while the Court is required to accept as true all well-pled allegations of material fact, the Court need not and should not "accept as true… conclusory [allegations], unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor should the court accept as true allegations that are "contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).[7]

## I.    PLAINTIFF'S TCPA CLAIM FAILS AS A MATTER OF LAW

The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular phone service." 47 U.S.C. § 227(b)(1)(A)(iii). For purposes of the TCPA, a text message is considered a "call." RJN, Ex. 3 ¶ 165 (*In the Matter of Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, *Report & Order*, CG Docket No. 02-278, 18 F.C.C. Rec'd 14014 (2003)); *see also Campbell-Ewald Co. v. Gomez,* 136 S.Ct. 663, 667 (2016); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).

To state a TCPA claim here, Plaintiff must establish three indispensable elements:

(1) Life360 was the *maker* of a text message to Plaintiff's cell phone;

(2) Life360 employed an *ATDS* to make the offending text; and

(3) Life360 sent the text message to Plaintiff's cell phone without his consent.

*See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *see also* RJN Ex. 3 ¶ 165; 47 U.S.C. § 227(a)(1). Plaintiff's TCPA claim fails because he has not alleged a concrete injury in fact sufficient to establish Article III standing, and even if he had, his own allegations establish that the Life360 App does not use an ATDS and does not make (*i.e.*, initiate)

---

[7] Alternatively, summary judgment is proper where, as here, there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

the text message invitations at issue.  Indeed, according to Plaintiff's own Amended Complaint, Life360's users—here, Plaintiff's own family member—initiate the text message invitations at issue, not the App.  *See* AC ¶¶ 19, 50; *see also* Hulls Decl. ¶¶ 3, 7-10, 16.

## A.  Plaintiff Has No Standing to Assert a TCPA Claim

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo*, 578 U.S. --, 2016 WL 2842447, at * 5.  "[T]he 'irreducible constitutional minimum' of standing consists of three elements."  *Id.*  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  The plaintiff bears the burden of establishing these elements, and "[w]here, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element."  *Id.* (citation omitted).  "[T]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Id.* at *6 (quoting *Lujan*, 504 U.S. at 560).  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist."  *Id.* at *7; *see also id.* ("When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term—'real' and not 'abstract.'").

Just four days ago, the Supreme Court in *Spokeo* addressed whether a plaintiff's allegation of a bare statutory violation, without more, is sufficient to establish a "concrete" injury for Article III standing purposes.  There, the plaintiff alleged that an online consumer reporting agency violated his rights under the Fair Credit Reporting Act of 1970 ("FCRA") by willfully reporting inaccurate information about him when his name was queried.  *Spokeo*, 2016 WL 2842447 at *4.  Like the TCPA, the FCRA purports to grant litigants a private right of action and authorizes the award of statutory damages.  *See id.* at *3.[8]  Like Plaintiff here, the plaintiff in *Spokeo* did not allege that he had suffered any actual, concrete harm as a result of the alleged statutory violation.  Rather, he alleged that the inaccuracies in his credit report could harm his employment prospects,

---

[8] The TCPA provides a private right of action for claims of calls made in violation of the act.  47 U.S.C. § 227(b)(3).  Courts are authorized to award either actual damages or statutory damages of $500 per violation.  *Id.*

1    and because his rights under the FCRA were enforceable through a private right of action, the

2    violation of those rights conferred upon him Article III standing.  *See Robins v. Spokeo, Inc.*, 742

3    F.3d 409, 410-11 (9th Cir. 2014).  The Ninth Circuit agreed, but the Supreme Court reversed.

4        In holding that the plaintiff's allegation of a statutory violation alone was insufficient to

5    confer Article III standing upon him, the Supreme Court reasoned as follows:

6            In the context of this particular case, these general principles tell us
             two things: On the one hand, Congress plainly sought to curb the
7            dissemination of false information by adopting procedures designed
             to decrease that risk.  On the other hand, Robins cannot satisfy the
8            demands of Article III by alleging a bare procedural violation.  A
             violation of one of the FCRA's procedural requirements may result
9            in no harm. . . . [N]ot all inaccuracies cause harm or present any
             material risk of harm.  An example that comes readily to mind is an
10           incorrect zip code.  It is difficult to imagine how the dissemination
             of an incorrect zip code, without more, could work any concrete
11           harm.

12   *Spokeo*, 2016 WL 2842447, at *8.

13       Here, Plaintiff has failed to allege a "concrete" harm that he suffered as a result of his

14   receipt of the text message at issue.  Instead, Plaintiff alleges that Life360 repeatedly invaded his

15   and the other putative class members' personal privacy, "thus causing them to suffer damages

16   and, under 47 U.S.C. § 227(b)(3)(B), each are entitled to recover $500 in damages for each

17   violation."  AC ¶ 53.  Plaintiff does not even allege, much less explain, what privacy interest of

18   his was invaded or how his receipt of the text message initiated by his own family member

19   invaded his privacy, nor has he alleged any other concrete injury that he actually suffered as a

20   result of receiving the allegedly offending text.  Instead, he asserts, in conclusory and abstract

21   fashion, that his privacy was invaded and that he is entitled to statutory damages.[9]

22

23

---

24   [9] Elsewhere in the Amended Complaint, Plaintiff alleges that he and the other putative class
     members have "suffered injuries in the form of . . . the monies paid to receive [Life360's]
25   unsolicited text messages, the diminished value and utility of their telephone equipment, and
     telephone subscription services . . ., the amount of time lost answering and fielding unwanted
26   telemarketing messages, the wear and tear on their telephone equipment, the loss of battery . . .,
     the loss of battery life . . ., and the electricity costs required to recharge their cellular phones."
27   AC ¶ 34.  Again, Plaintiff does not allege any of this actually happened to him, and, for the
     reasons set forth *infra* at 19-20, these hypothetical, speculative and conjectural allegations of
28   harm do not establish a concrete injury in fact.

Because Plaintiff has failed to adequately allege a concrete injury in fact, his TCPA claim should be dismissed pursuant to Rule 12(b)(1) for lack of standing.  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of *Article III* standing requires dismissal for lack of subject matter jurisdiction [Rule] 12(b)(1).") (emphasis in original).

### B.      The Life360 App Did Not "Make" the Invitational Text Message

The TCPA only imposes liability upon a party who *makes* a call or text to a wireless telephone using an ATDS without prior express consent from the called party.  *See* 47 U.S.C. § 227(b)(1)(A).  While the TCPA does not define what it means to "make" a call or text, the FCC, which is responsible for implementing the TCPA, recently clarified that an app provider such as Life360 cannot be held liable under the TCPA as the "maker" of a text when an invitational text message is only sent after an app user affirmatively selects whom from his list of contacts he wishes to invite.  *See* RJN, Ex. 4 ¶ 25 (*In the Matter of Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991, Declaratory Ruling & Order*, CG Docket No. 02-278 (2015) (the "2015 Order").

In its 2015 Order, the FCC examined whether certain apps run by Glide Talk, Ltd. ("Glide") and TextMe, Inc. ("TextMe") were the "makers" of text messages for purposes of the TCPA.   The FCC found that the Glide app was the "maker" of texts because it would *automatically* spam a user's contacts with text messages even though the user had not selected for those contacts to receive invitations.  *See* RJN, Ex. 4 ¶ 35.  By contrast, the FCC found that the TextMe app was *not* the "maker" of text message invitations under the TCPA because its users had to select whom, if anyone, they wished to send invitations to.  *See id.* ¶ 37.

The Life360 App's invitational text message process is materially indistinguishable from the TextMe app's process, which the FCC described as follows:

> In order to increase the number of users, the TextMe app . . . enables users to send invitational text messages to contacts in their phone's address book. . . . An app user must (1) tap a button that reads "invite your friends"; (2) choose whether to "invite all their friends or [] individually select contacts"; and (3) choose to send the invitational text message by selecting another button.  TextMe then sends the invitational text messages, which "include[s] [the] user['s] TextMe handle and invite[s] the recipient to install the App."

RJN, Ex. 4 ¶ 36 (alterations in original); *see also* Hulls Decl. ¶¶ 4-11.  Under these circumstances, the FCC determined that TextMe could not be held liable under the TCPA because "the app user and not TextMe is the maker of the invitational text message."  RJN, Ex. 4 ¶ 37; *see also id.* ("TextMe is not the maker or initiator of the invitational text messages because it is not programming its cloud-based dialer to dial any call, but 'merely ha[s] some role, however minor, in the causal chain that results in the making of a telephone call.'") (alteration in original).

The Hobbs Act, as well as United States Supreme Court and Ninth Circuit precedent, require this Court to follow the FCC's TextMe ruling and dismiss Plaintiff's TCPA claim with prejudice because, according to Plaintiff's own allegations, Life360's users, not the Life360 App, are the "makers" of the invitational text messages at issue.  *See Daniel v. Five Stars Loyalty, Inc.*, Case No. 15-cv-03546-WHO, 2015 WL 7454260, at *6 n.6 (N.D. Cal. Nov. 24, 2015) (following the FCC's 2015 Order because, "[u]nder the Hobbs Act, [district courts are] bound by an FCC final order unless it is invalidated by a court of appeals"); *see also Chevron v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984) (holding that courts should defer to an administrative agency's interpretation of federal law where the statute is silent on the issue and the agency's construction of the statute is not "arbitrary, capricious, or manifestly contrary to the statute"); *Satterfield*, 569 F.3d at 954 (deferring to the FCC's interpretation of the word "call," which is not defined in the TCPA); *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1056 (9th Cir. 2008) ("When a statute is ambiguous or leaves key terms undefined, a court must defer to the federal agency's interpretation of the statute, so long as such interpretation is reasonable.").

Indeed, numerous courts in this District have followed the FCC's TextMe ruling and dismissed TCPA claims based on virtually identical facts.

In *WhisperText*, Magistrate Judge Grewal recently dismissed a TCPA claim against an app provider with prejudice pursuant to Rule 12(b)(6) because, *inter alia*, its WhisperText app sent invitational text messages only after the user selected whether to invite some or all of his contacts, which meant that the app's users, and not the app itself, were the makers of the texts.  2015 WL 5264750, at *5 ("[E]ven though WhisperText uses automated processes to harvest and upload a user's selected phone numbers and then send invitational messages, that is insufficient to make

- 13 -

1    WhisperText the maker or initiator of a call using an ATDS under the TCPA.").

2          Likewise, in *Huricks v. Shopkick, Inc.*, Judge Chesney recently dismissed a TCPA claim

3    against an app provider because users of its app must choose whom, if anyone, from their phone's

4    contact list to have invitational text messages sent to.  No. C-14-2464 MMC, 2015 WL 5013299,

5    at *3 (N.D. Cal. Aug. 24, 2015).   In granting summary judgment for the defendant, Judge

6    Chesney wrote:

7              The Court finds the steps the user must have taken to cause the
               Shopkick invitational text messages to be sent are indistinguishable
8              in all material respects from the steps a user of the TextMe app
               must take to cause the TextMe invitational texts to be sent, which
9              steps, as set forth above, are tapping a button stating "invite your
               friends," choosing which contacts to invite, and choosing to send
10             the text messages by tapping another button.

11   *Id.*  The court also found that the "generic and commercial" nature of the text message invitations

12   at issue—which "provide[d] a link to the Shopkick website accompanied by the phrase 'Check it

13   out'"—was immaterial and irrelevant to its holding that the Shopkick app did not "make" the text

14   message invitations at issue.  *Id.* at *4.

15          Here, Plaintiff's own allegations establish that a user of the Life360 App must take the

16   affirmative step of selecting whom, if anyone, from his list of contacts he wishes to cause an

17   invitational text message to be sent to.  *See* AC ¶ 50 ("Users of [the App] are encouraged to invite

18   a group of pre-selected 'Recommended' 'Members' to their 'map' or circle of friends."); *see also*

19   *id.* ¶ 19 (conceding that users select whom, if anyone, they wish to invite).  Plaintiff's own

20   allegations also establish that he only received the invitational text message at issue after one of

21   his contacts selected to have an invitation sent to him.  *See id.* ¶ 35 & Figure 12; *see also* Beaman

22   Decl., Ex. 1; RJN, Ex. 1.  Indeed, it was Plaintiff's own family member who sent him the

23   invitational text message.  *See* Hulls Decl. ¶ 16.

24          Moreover, Plaintiff concedes that text messages to invitees cannot be sent unless and until

25   the user takes the additional step of pressing the "Invite" button after first selecting which

26   contacts to invite.  *See* AC ¶ 19; *see also* Hulls Decl. ¶¶ 9-10.  While Plaintiff alleges that

27   Life360, through its programming of the App, has full control over "when, subsequent to the user

28   pressing the 'invite' button, [the text message] will be sent" (AC ¶ 24), nothing in that vague

1    allegation plausibly suggests that the App delays messages or sends them anytime other than

2    immediately after a Life360 user directs the App to do so.  That is because Plaintiff's counsel

3    knows from their own investigation of the App that it sends the user's requested text message

4    invitations immediately after the user presses the "Invite" button.  *See supra* at 7; *see also* Hulls

5    Decl. ¶¶ 9-10.  In any event, what an app might hypothetically, theoretically, possibly be

6    programmed to do is irrelevant to the determination of whether it is the "maker" of text messages.

7    Here, the reality is that the Life360 App does not, will not and cannot send text message

8    invitations to a user's contacts unless and until the user affirmatively selects to send those

9    contacts an invitation.  *See* AC ¶¶ 19-20; *see also* Hulls Decl. ¶¶ 3, 7-10.

10        The FCC definitively ruled in its 2015 Order that an app is not the "maker" of a text under

11   the TCPA based on facts identical to those alleged by Plaintiff.  So did the court in *WhisperText*

12   and so did the court in *Shopkick*.  This Court should follow this well-established line of authority

13   and similarly dismiss Plaintiff's TCPA claim under Rule 12(b)(6) or, alternatively, grant

14   summary judgment for Life360 under Rule 56(a).

15        **C.    The Life360 App Does Not Use an ATDS**

16        The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or

17   produce telephone numbers to be called, using a random or sequential number generator; and (B)

18   to dial such numbers."  47 U.S.C. § 227(a)(1).  The FCC and this District have held that the

19   defining characteristic of an ATDS is the capacity "to dial numbers without human intervention."

20   RJN, Ex. 3 ¶ 132; *see also Glauser* 2015 WL 475111 ("[W]hile the capacity for

21   random/sequential dialing is not required for TCPA liability, the capacity to dial numbers without

22   human intervention is required.").  Thus, "where an application sends SMS [text] invitations only

23   at the user's affirmative direction, the action taken is with human intervention, meaning that the

24   equipment at issue is not an ATDS."  *WhisperText*, 2015 WL 5264750, at *4.

25        Here, Plaintiff's claim should be dismissed because the Amended Complaint does not

26   allege facts sufficient to establish that the Life360 App uses an ATDS.  On this issue, this

27   District's recent decisions in *WhisperText* and *GroupMe* are dispositive, as they each dismissed

28   TCPA claims with prejudice because each of the apps at issue only sent text message invitations

1   to individuals selected to be invited by the app's user and, thus, did not use an ATDS.

2        In *WhisperText*, the court found that the affirmative steps of human intervention required

3   by the WhisperText app user before any invitational text messages were sent precluded a claim

4   that the application used an ATDS.  Indeed, the court held that applications which send text

5   invitations "only at the user's affirmative direction foreclose any plausibility that" the messages

6   are sent "using an ATDS, without human intervention."  2015 WL 5264750 at *3.

7        Likewise, in *GroupMe*, Judge Hamilton granted summary judgment for the defendant

8   because the plaintiff failed to "raise a triable issue of fact as to whether defendant's texting

9   equipment had the capacity to dial numbers without human intervention, as required to be

10   considered an 'autodialer' for TCPA purposes."  2015 WL 475111 at *7.  Even accepting the

11   plaintiff's allegation that the GroupMe users "were never informed that the messages would be

12   sent," the court held that there was "no basis for plaintiff's argument that the Welcome Texts

13   were sent without human intervention" because, *inter alia*, the plaintiff admitted "that the

14   Welcome Texts were triggered when 'GroupMe obtained the telephone numbers of the newly

15   added group members' . . . and ignore[d] the fact that GroupMe obtained those numbers through

16   the actions of the [app's user]."  *Id.* at *6.  The court held that GroupMe did not use an ATDS

17   because "the Welcome Texts were sent to plaintiff as a direct response to the intervention of . . .

18   the [GroupMe app's user]," and therefore GroupMe could not be held liable under the TCPA.  *Id.*

19        Like the apps in *WhisperText* and *GroupMe*, the Life360 App requires human intervention

20   for invitational text messages to be sent to a user's contacts.  While Plaintiff alleges that Life360

21   "[u]sers are not told that invitees will be sent text messages" (AC ¶ 50), Plaintiff concedes that

22   the App's invitational text messages are only sent to individuals whom the App's users select

23   from their own list of contacts (*id.*; *see also id.* ¶ 19).  The App therefore does not use an ATDS

24   as a matter of law.[10]

25

26   _____

[10] Moreover, Plaintiff's legally irrelevant suggestion that, because the App does not specifically
27   tell users that their chosen invitees will receive a text message, Life360 users are not aware that a
    text message invitation will be sent to them, is unreasonable and entitled to no credit from the
28   Court.  *See Sprewell*, 266 F.3d at 988 (the court need not accept as true "unwarranted deductions
    of fact or unreasonable inferences").  Plaintiff provides no factual basis for this contention, which,
    even if true, does not amount to a violation of the TCPA.  *See GroupMe*, 2015 WL 475111 at *6.

1    Accordingly, Plaintiff's TCPA claim should be dismissed with prejudice for failure to

2    allege use of an ATDS, or, alternatively, summary judgment should be entered for Life360.

3    **II.    PLAINTIFF'S UCL CLAIM FAILS AS A MATTER OF LAW**

4        Plaintiff's UCL claim fails as a matter of law and should be dismissed for three reasons.

5        *First*, Plaintiff's UCL claim is premised entirely on Life360's alleged violation of the

6    TCPA (*see* AC ¶¶ 56-61), and therefore fails for the same reasons as his TCPA claim.  *See supra*

7    at 10-16.  Courts routinely dismiss UCL claims where, as here, the plaintiff relies on but has

8    failed to adequately allege an underlying TCPA violation. *See, e.g., Sepehry-Fard v. Dep't Stores*

9    *Nat'l Bank*, 15 F. Supp. 3d 984, 991 (N.D. Cal. 2014) (dismissing UCL claim where it was

10   "premised on the same conduct that [plaintiff] relied on to support his now dismissed" TCPA

11   claim); *Sepehry-Fard v. MB Fin. Servs.*, Case No. 13-cv-02784-BLF, 2014 WL 2191994, at *5

12   (N.D. Cal. May 23, 2014) (same); *Pietzak v. Microsoft Corp.*, Case No. CV 15-5527-R, 2015 WL

13   7888408, at *2 (C.D. Cal. Nov. 17, 2015) (same); *see also McGough v. Wells Fargo Bank, N.A.*,

14   No. C12-0050 TEH, 2012 WL 5199411, at *5 (N.D. Cal. Oct. 22, 2012) (dismissing UCL claim

15   where plaintiff failed to state underlying predicate claim) (Henderson, J.).

16       *Second*, Plaintiff lacks standing to assert a UCL claim for two separate and independent

17   reasons.  Nonresidents such as Plaintiff cannot bring a cause of action under the UCL where the

18   alleged conduct did not occur in California.  *See Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271

19   (9th Cir. 2011) (holding that UCL did not apply to decisions and policy set by California-based

20   company where policy was implemented against plaintiffs out of state); *see also Clothesrigger,*

21   *Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 612 (4th Dist. 1987) (nonresidents' claims under the

22   UCL must be dismissed "where none of the alleged misconduct or injuries occurred in

23   California").  That is because the presumption against the extraterritorial application of California

24   law "applies to the UCL in full force."  *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011).

25       Here, Plaintiff resides in Michigan (AC ¶ 8), and he fails to allege that any of the activities

26   at issue occurred anywhere other than in Michigan.  Indeed, the text message was sent to Plaintiff

27   in Michigan by his family member, who also resides in Michigan.  *See* Hulls Decl. ¶ 16.  The

28   lone allegation on which Plaintiff relies to connect his claim to California is that Life360 is

1    headquartered here.  That, however, is not enough to support a nonresident's attempt to apply the

2    UCL extraterritorially.  *See Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1056-57

3    (N.D. Cal. 2013) (dismissing UCL claim where only alleged connection to California was that

4    defendant was headquartered there); *Frezza v. Google, Inc.*, No. 5:12-cv-00237-RMW, 2013 WL

5    1736788, at *5 (N.D. Cal. Apr. 22, 2013) (dismissing nonresidents' UCL claim against Google

6    because "Google[] is headquartered in California, and the allegedly fraudulent representations

7    originated from California, but the *transactions* at the center of the dispute . . . occurred in the

8    plaintiffs' state of North Carolina") (emphasis in original); *see also MacKinnon v. Logitech Inc.*,

9    Case No. 15-cv-05231-TEH, 2016 WL 541068, at *4 (N.D. Cal. Feb. 11, 2016) (dismissing

10   nonresident's UCL claim where plaintiff made only conclusory allegations of a nexus to

11   California) (Henderson, J.).

12       Moreover, the Amended Complaint fails to adequately plead an economic injury that was

13   caused by Life360's alleged violation of the TCPA, which is an indispensable requirement to

14   establish standing under the UCL.  *See* Cal. Bus. & Prof. Code § 17204 (requiring that any

15   individual who brings a UCL claim "has suffered injury in fact and has lost money or property as

16   a result of the unfair competition."); *see also Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04

17   (9th Cir. 2010) (UCL's standing requirement requires plaintiff to "show that she has lost 'money

18   or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution, and

19   also requires a 'causal connection' between [the defendant's] alleged UCL violation and her

20   injury in fact") (citations omitted); *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 n.1

21   (9th Cir. 2011) (UCL plaintiffs "must prove a pecuniary injury and 'immediate' causation.").

22       As an initial matter, Plaintiff's allegations that he and the putative class members suffered

23   non-economic injuries such as invasion of privacy, violations of their statutory rights,

24   aggravation, nuisance and lost time answering texts (AC ¶¶ 6, 34) fail to confer standing under

25   the UCL.  *See Sepehry-Fard v. MB Fin. Servs.*, Case No. 13-cv-02784-BLF, 2015 WL 903364, at

26   *7 (N.D. Cal. Mar. 2, 2015) (dismissing UCL claim because plaintiff's alleged irritability and loss

27   of privacy from text messages allegedly in violation of TCPA were not economic losses);

28   *Sepehry-Fard*, 2014 WL 2191994 at *5 (same); *see also Fife v. Facebook, Inc.*, No. C 12-1894

1   CW, 2013 WL 6734239, at *6 (N.D. Cal. Dec. 20, 2013) (dismissing UCL claim because

2   plaintiffs' allegation that their statutory rights were violated by alleged violations of TCPA was

3   not an allegation of economic harm); *Pietzak*, 2015 WL 7888408 at *2 (embarrassment and

4   emotional distress from spam text messages are not cognizable economic injuries under UCL).

5          Plaintiff's only purported allegations of economic injury are vague, conclusory,

6   unsubstantiated, theoretical and hypothetical:

> Plaintiff and members of the [putative] Class suffered injuries in the
> form of . . . the monies paid to receive [Life360's] unsolicited text
> messages, the diminished value and utility of their telephone
> equipment and telephone subscription services (i.e., the value of
> such equipment and services is higher when unencumbered by
> repeated and harassing text message calls) . . ., the wear and tear on
> their telephone equipment, the loss of battery (which becomes
> diminished with each incoming phone call) . . ., the loss of battery
> life (which has a finite number of charging cycles). . ., and the
> electricity costs required to recharge their cellular phones.

12  AC ¶ 34; *see also id.* ¶ 59.

13         Plaintiff does not allege that he has actually paid a higher amount to his cell phone service

14  provider or electricity provider as a result of receiving the invitational text at issue, much less

15  what excess amounts Life360's allegedly offending text is responsible for.[11]  Plaintiff does not

16  allege how his economic theory that the value of his phone and cell service was diminished by

17  receiving the text at issue has translated into an actual, concrete economic loss that he has

18  suffered (*i.e.*, money out of his pocket).   Plaintiff does not allege how Life360's alleged

19  invitational text caused "wear and tear" to his phone, much less what "wear and tear" Life360's

20  alleged text caused—nor could he, as it is difficult to imagine how Plaintiff's receipt of the text

21  message could have caused physical damage to his phone.  Finally, Plaintiff does not allege that

22  the text actually caused his cell phone's battery life to be diminished, much less how the alleged

23  diminished capacity of his phone's battery caused him a concrete, economic loss (*i.e.*, again,

---

[11] Even if Plaintiff could tie Life360's allegedly offending text to excess amounts that he otherwise would not have had to pay his cell phone provider (he has not), Plaintiff could not possibly allege that this is true of all members of the putative class, which necessarily includes individuals who:  (i) pay flat rates for unlimited texts, in which case a text from Life360 could not possibly lead to a higher cell phone bill; or (ii) pay for plans that charge overage fees after the plan's texting limit has been exceeded, in which case they would not be charged for texts they receive over their limit unless they consent to opening the text.

1    money out of his pocket).[12]

2         In short, the Complaint fails to connect Life360's alleged violation of the UCL to a

3    tangible economic loss suffered by Plaintiff.  Instead, Plaintiff's allegations of economic loss are

4    "nothing more than 'conjecture,' 'speculative,' and 'hypothetical'—the exact type of allegations

5    that fail to establish harm for the purposes of standing" under the UCL.  *Pietzak*, 2015 WL

6    7888408, at *2 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S.

7    167, 180-81 (2000)).  Indeed, courts in the Ninth Circuit have repeatedly dismissed UCL claims

8    based on similarly deficient allegations of harm.  *See, e.g., London v. New Albertson's, Inc.*, No.

9    08-CV-1173 H(CAB), 2008 WL 4492642, at *10 (S.D. Cal. Sept. 30, 2008) (dismissing UCL

10   claim plaintiff alleged that defendants' acts "deprived Plaintiff of money and diminished the

11   value of highly marketable information"); *York v. Bank of Am.*, Case No. 14-cv-02471-RS, 2015

12   WL 6152478, at *7 (N.D. Cal. Oct. 20, 2015) (dismissing UCL claim because plaintiffs'

13   allegations failed to "connect BOA's allegedly unfair, unlawful, or deceptive practices to tangible

14   economic losses"); *Maynard v. Wells Fargo Bank, N.A.*, No. 12CV1435 AJB (JMA), 2012 WL

15   4898021, at *7 (S.D. Cal. Oct. 15, 2012) (dismissing UCL claim because "Plaintiff merely states

16   that he has 'lost money or property and suffered an injury in fact,' but fails to offer any factual

17   basis for such conclusions").  This Court should do the same.

18   **III.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO**
19          **AMEND OR, ALTERNATIVELY, SUMMARY JUDGMENT SHOULD BE**
            **ENTERED FOR LIFE360**

20        A district court may dismiss a complaint without leave to amend where amendment would

21   be futile.  See *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

22   Amendment is futile when an amended complaint could not withstand a motion to dismiss.  *See*

23   *Steckman*, 143 F.3d at 1298.  Here, Plaintiff has already amended his Complaint once after having

24   had the benefit of reviewing Life360's First Motion to Dismiss.  *See supra* at 7-8.  The Amended

25   Complaint does not (because it cannot) cure any of the fatal defects that Life360 previously

26   identified in Plaintiff's initial Complaint.  *See supra* at 12-20.  Any further amendment also could

---

[12] Plaintiff also alleges that Life360's "unlawful and unfair conduct occurred during attempts to collect on consumer debts."  AC ¶ 62.  Life360 assumes this allegation was erroneously included in the Amended Complaint, as this allegation does not apply to Life360's business.

1    not withstand a motion to dismiss because Plaintiff's UCL claim is premised on Life360's alleged

2    violation of the TCPA and, under the FCC's TextMe ruling and the numerous decisions following

3    it in this District, Life360 cannot be held liable for a violation of the TCPA because the Life360

4    App is not the "maker" of the text message invitations at issue and does not use an ATDS.  *See id.*

5    For these same reasons, Life360 requests, in the alternative, that the Court grant summary

6    judgment in its favor.[13]

7                                                    **CONCLUSION**

8          For the foregoing reasons, Life360 respectfully requests that the Court dismiss the

9    Amended Complaint with prejudice, or, in the alternative, enter summary judgment in Life360's

10   favor.  Life360 reserves all rights to seek an award of its attorneys' fees and expenses incurred in

11   responding to the Complaint and the Amended Complaint.

12

13

14

15

16   _____

[13] Alternatively, to the extent individuals such as Plaintiff wish to take issue with any text
17   messages they may have received, Life360 permits them to arbitrate, rather than litigate, their
     claims.  *See Shappell v. Sun Life Assur. Co.*, No. 2:10-cv-03020-MCE-EFB, 2011 WL 2070405,
18   at *3 (E.D. Cal. May 23, 2011) (dismissing claims subject to arbitration under Rule 12(b)(1)
     because the "arbitration requirement amounts to a jurisdictional bar against the present case from
19   proceeding in this Court").  Among other things, Life360's website contains Life360's Terms of
     Service, which require arbitration of any and all claims "arising out of or in connection with or
20   relating to these Terms of Use" on an individual, rather than class-wide basis.  *See* Hulls Decl.,
     Ex. 13 § 15.B.   Arbitration and class action waiver clauses such as this must be strictly enforced.
21   *See AT&T Mobility v. Concepcion*, 563 U.S. 333 (2011) *Sherman v. RMH, LLC*, No. 13-cv-1986-
     WQH-WMC, 2014 WL 30318, at *6 (S.D. Cal. Jan. 2, 2014); *Couser v. Comenity Bank*, 125 F.
22   Supp. 3d 1034, 1042 (S.D. Cal. 2015); *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1061 (9th
     Cir. 2013).  Moreover, arbitration is not an unsuitable forum for resolving Plaintiff's claims, nor
23   is class action litigation a superior forum to arbitration, as Plaintiff may fully vindicate his
     statutory rights under the TCPA and UCL in arbitration.  *See Cayanan v. Citi Holdings, Inc.*, 928
24   F. Supp. 2d 1182, 1206-07 (S.D. Cal. 2013); *see also Adams v. AT&T Mobility, LLC*, 816 F.
     Supp. 2d 1077, 1092 (W.D. Wash. 2011).    The Court may consider the contents of Life360's
25   website and Terms of Service for any one of four reasons.  *First*, the website is expressly cited,
     referred to and relied on in the Amended Complaint and therefore may be considered on a Rule
26   12(b)(6) motion to dismiss.  *See Daniels-Hall*, 629 F.3d at 998.  *Second*, the Life360 website, and
     the Hulls Declaration explaining how a text message invitee such as Plaintiff arrives at it, forms
27   the basis for Life360's factual challenge to the Court's subject matter jurisdiction over Plaintiff's
     claims.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). *Third*, the
28   Court may also take judicial notice of these materials.  *See* RJN ¶ 1.  *Fourth*, the Court may
     consider these materials if this motion is treated as one for summary judgment under Rule 56(a).

1    Dated: May 20, 2016

2                                          Respectfully submitted,

3                                          ORRICK, HERRINGTON & SUTCLIFFE LLP

4

5                                          */s/ William A. Molinski*
                                           WILLIAM A. MOLINSKI (SBN 145186)
6                                          wmolinski@orrick.com
                                           ORRICK, HERRINGTON & SUTCLIFFE LLP
7                                          777 South Figueroa Street
                                           Suite 3200
8                                          Los Angeles, CA 90017
                                           Telephone: (213) 629-2020
9                                          Facsimile: (213) 612-2499

10                                         GREGORY D. BEAMAN (admitted *pro hac vice*)
                                           gbeaman@orrick.com
11                                         ORRICK, HERRINGTON & SUTCLIFFE LLP
                                           Orrick Building at Columbia Center
12                                         1152 15th Street, N.W.
                                           Washington, D.C.  20005-1706
13                                         Telephone: (202) 339-8400
                                           Facsimile: (202) 339-8500

14

15                                         Attorneys for Defendant Life360, Inc

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS OR FOR SUMMARY JUDGMENT
CASE NO. 3:16-cv-00805-TEH