Rafey S. Balabanian*
rbalabanian@edelson.com
Todd Logan (SBN – 305912)
tlogan@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Ari J. Scharg*
ascharg@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Admitted *pro hac vice*

*Attorneys for Plaintiff and the Putative Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| TERRY COUR II, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>LIFE360, INC., a Delaware corporation,<br><br>*Defendant.* | Case No. 3:16-cv-00805-TEH<br><br>Honorable Thelton E. Henderson<br><br>**PLAINTIFF'S (1) RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND (2) CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 2

    I.      Life360's Growth Hacking Sign Up Process ........................................... 2

    II.     Plaintiff Cour's Experience ........................................................................ 4

ARGUMENT ................................................................................................................... 4

    I.      The Court Has Jurisdiction to Hear this Case ......................................... 4

        A.     Life360's Spamwrap Cannot Bind Mr. Cour to an Arbitration Agreement..... 4

        B.     *Spokeo* Does Not Divest this Court of Jurisdiction ................................. 6

    II.     Life360's Summary Judgment Motion Is So Cursory that the Court Should Not Consider It .......................................................................... 10

    III.    Mr. Cour Both Plausibly Alleges a Violation of the TCPA and Is Entitled to Partial Summary Judgment ...................................................... 11

        A.     Mr. Cour Adequately Alleges that Life360 Used an Autodialer to Text Him ............................................................................ 12

        B.     Mr. Cour Not Only Plausibly Alleges that Life360 Initiated the Text Message He Received, But the Undisputed Evidence Shows that He Is Entitled to Partial Summary Judgment ........................... 14

        C.     If the Court Addresses Life360's Summary Judgment Motion, It Cannot Consider Life360's Proffered Evidence that Mr. Cour's Family Member Sent the Text Message at Issue ........................ 19

    IV.    Mr. Cour Has Standing Under the UCL ................................................. 21

CONCLUSION ............................................................................................................... 23

Pl's Opp. to Def's Mot. to Dismiss
And Cross Motion for Part. Summ. Judg.
    ii    3:16-cv-00805-TEH

# TABLE OF AUTHORITIES

**Cases**

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
    785 F.3d 1320 (9th Cir. 2015) ...................................................................5

*Bartell v. JPMorgan Chase Bank, NA*,
    607 F. App'x 731 (9th Cir. 2015) .............................................................10

*Bias v. Moynihan*,
    508 F.3d 1212 (9th Cir. 2007) .................................................................20

*Block v. City of Los Angeles*,
    253 F.3d 410 (9th Cir. 2001) ...................................................................20

*Booth v. Appstack, Inc.*, No. C13-1533JLR,
    2016 WL 3030256 (W.D. Wash. May 25, 2016).......................................7

*Brae Transp., Inc. Coopers & Lybrand*,
    790 F.2d 1439 (9th Cir. 1986) .................................................................11

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016)...............................................................................12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................................14

*Correa v. City of San Jose*, No. 5:12-CV-05436-HRL,
    2015 WL 5559893 (N.D. Cal. Sept. 16, 2015) .......................................11

*Ctr. for Biological Diversity v. Exp.-Imp. Bank of the U.S.*, No. C 12-6325 SBA,
    2014 WL 3963203 (N.D. Cal. Aug. 12, 2014) .......................................10

*Dennin v. Comm'r of Soc. Sec.*, No. 15-CV-03686-SK,
    2016 WL 1322993 (N.D. Cal. Apr. 5, 2016) ..........................................10

*DISH Network, L.L.C. v. Sonicview USA, Inc.*, No. 09-CV-1553-L WVG,
    2012 WL 1965279 (S.D. Cal. May 31, 2012)..........................................10

*Durell v. Sharp Healthcare*,
    108 Cal. Rptr. 3d 682 (Ct. App. 2010).....................................................21

*Errington v. Time Warner Cable Inc.*, No. 2015-CV-02196,
    2016 WL 2930696 (C.D. Cal. May 18, 2016) ...........................................6

*Fontenberry v. MV Transp., Inc.*,
   984 F. Supp. 2d 1062 (E.D. Cal. 2013)..................................................22

*Gamez-Morales v. Pac. Nw. Renal Servs., LLC*,
   304 F. App'x 572 (9th Cir. 2008) ......................................................19

*Glauser v. GroupMe*, No. C 11-2584,
   2015 WL 375111 (N.D. Cal. Feb 4, 2015) ..........................................13

*Harnish v. Frankly Co.*, No. 5:14-CV-02321-EJD,
   2015 WL 1064442 (N.D. Cal. Mar. 11, 2015)......................................13

*Huricks v. Shopkick, Inc.*, No. C-14-2464 MMC,
   2015 WL 5013299 (N.D. Cal. Aug. 24, 2015) ...............................17, 18

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.*,
   847 F. Supp. 2d 1253 (S.D. Cal. 2012)................................................13

*Kwikset Corp. v. Superior Court*,
   246 P.3d 877 (Cal. 2011)............................................................21, 22

*Martinez v. Am.'s Wholesale Lender*,
   446 F. App'x 940 (9th Cir. 2011) ................................................19, 20

*McKenna v. WhisperText*, No. 5:14-CV-00424-PSG,
   2015 WL 428728 (N.D. Cal. Jan. 30, 2015) ........................................17

*McKenna v. WhisperText*, No. 5:14-CV-00424-PSG,
   2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) .......................................17

*Mims v. Arrow Fin. Servs., LLC*,
   132 S. Ct. 740 (2012).............................................................7, 8, 9

*Mogadam v. Fast Eviction Serv.*, No. SACV 14-01912 JVS,
   2015 WL 1534450 (C.D. Cal. Mar. 30, 2015)......................................13

*Narayanan v. British Airways*,
   747 F.3d 1125 (9th Cir. 2014) ..........................................................11

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171, 1175 (9th Cir. 2014)................................................4, 5

*Orr v. Bank of Am., NT & SA*,
   285 F.3d 764 (9th Cir. 2002)............................................................19

*Pac. Bell Tel. Co. v. California Pub. Utilities Comm'n,*
    621 F.3d 836 (9th Cir. 2010) ..................................................12

*Rogers v. Capital One Bank (USA), N.A.*, No. 1:15-CV-4016-TWT,
    2016 WL 3162592 (N.D. Ga. June 7, 2016) ...............................7

*Rollins v. Dignity Health,*
    19 F. Supp. 3d 909 (N.D. Cal. 2013) .......................................11

*Sepehry-Fard v. Dep't Stores Nat'l Bank*, No. 13-CV-03131-WHO,
    2013 WL 6574774 (N.D. Cal. Dec. 13, 2013) .........................21

*Sherman v. Yahoo! Inc.*, No. 13CV0041-GPC-WVG,
    2015 WL 8757028 (S.D. Cal. Dec. 14, 2015) .........................13

*Skaff v. Meridien N. Am. Beverly Hills, LLC,*
    506 F.3d 832 (9th Cir. 2007) ....................................................9

*Skinner v. Switzer,*
    131 S. Ct. 1289 (2011) ..............................................................9

*Smith v. Clark Cty. Sch. Dist.,*
    727 F.3d 950 (9th Cir. 2013) ..................................................14

*Spokeo Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ...................................................*passim*

*Thomas v. Dun & Bradstreet Credibility Corp.,*
    100 F. Supp. 3d 937 (C.D. Cal. 2015) ....................................22

*United States v. Bennett,*
    363 F.3d 947 (9th Cir. 2004) ..................................................20

**Statutory Authority**

28 U.S.C. § 2342 ................................................................................12

47 U.S.C. § 227 .............................................................................1, 12

Cal. Bus. & Prof. Code § 17200 *et seq.* .........................................21

Pub. L. 102–243, § 2, 105 Stat. 2394 (1991) .....................................9

## Other Authority

137 Cong. Rec. 30 (1991) ...........................................................................................................9

Dep't of Homeland Sec., *Protect Myself from Cyber Attacks*, http://1.usa.gov/1TJZLoc .............5

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
30 F.C.C. Rcd. 7961 (2015) ..................................................................................... *passim*

*Jobs*, Life360, https://www.life360.com/jobs/ (last visited June 17, 2016) ...............................22

Fed. R. Evid. 803(6) .................................................................................................................20

Fed. R. Evid. 901(b)(1) ...........................................................................................................20

Fed. R. Evid. 902(11) ..............................................................................................................20

Heather Kelly, *Google+ Is Getting Dismantled*, CNN Money (July 27, 2015 3:10 p.m.),
http://cnnmon.ie/1Kuc1ah ..........................................................................................2

Bridget Small*, Random Text? Wait, Wait, Don't Click That*, Federal Trade Commission
Consumer Information (Feb. 28, 2014), http://1.usa.gov/1sg48hR ...................................5

TextMe, Inc's Petition for Expedited Declaratory Ruling and Clarification,
http://goo.gl/rpI1cv ....................................................................................................17

Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890)........8

# INTRODUCTION

Plaintiff Terry Cour II brought this case to challenge Defendant Life360's unlawful practice of attempting to grow its business by sending spam text messages to mobile phone subscribers in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Life360 responded to Mr. Cour's amended complaint by filing a "Motion to Dismiss, or, in the Alternative, for Summary Judgment," in which it argues that Mr. Cour's claim should be dismissed with no discovery, mostly by way of contradicting the allegations in the complaint and by making cursory, unsupported requests for summary judgment. (Dkt. 39.)

None of Life360's arguments on either jurisdictional or merits questions entitle it to judgment in its favor. To start, Life360 challenges this Court's jurisdiction on the basis of a purported arbitration agreement and the Supreme Court's recent decision in *Spokeo Inc. v. Robins*, 136 S. Ct. 1540 (2016). However, Life360 cannot even come close to showing the existence of an agreement to arbitrate, and its misreading of the *Spokeo* decision does not defeat Mr. Cour's Article III standing.

Moving past jurisdiction and on to the merits, Life360 attempts to obtain summary judgment by making conclusory requests for such relief, largely in footnotes. The Court should decline to address such undeveloped arguments lacking in legal analysis. Rather, Life360's motion should be treated only as a motion to dismiss, not as one for summary judgment.

Life360 seeks dismissal of both Mr. Cour's TCPA claims and his California state law claims on Rule 12(b)(6) grounds. On the TCPA front, it can only argue that, contrary to Mr. Cour's allegations, it did not use an autodialer or initiate the invitation text messages. Not only does Mr. Cour adequately allege that Life360 used an autodialer, but the undisputed evidence as set forth in the declaration attached to Life360's motion shows so clearly that Life360 *did* initiate the invitation text message that, even at this early stage, he is entitled to partial summary judgment on the issue. As far as the California claims are concerned, Life360's position again contradicts the facts pleaded in Cour's complaint.

PL'S OPP. TO DEF'S MOT. TO DISMISS
AND CROSS MOTION FOR PART. SUMM. JUDG.

1

3:16-cv-00805-TEH

1    Accordingly, Life360's summary judgment motion should be denied as conclusory, its

2    motion to dismiss should be denied because Mr. Cour has stated a claim with regard to both

3    counts, and the Court should grant partial summary judgment to Mr. Cour because the

4    undisputed evidence presented by Life360 itself shows that Life360 initiated the spam text

5    message he received.

6                                      **FACTUAL BACKGROUND**

7    **I.        Life360's Growth Hacking Sign Up Process.**

8        Social networking is a highly competitive market, and social media businesses need to

9    have a large and active user base to turn a profit. (Dkt. 33 ¶ 29.) Even established companies

10   have had trouble attracting a dedicated following to their social networking operations. *See, e.g.*,

11   Heather Kelly, *Google+ Is Getting Dismantled*, CNN Money (July 27, 2015 3:10 p.m.),

12   http://cnnmon.ie/1Kuc1ah. Without user growth, new companies can't get funding and,

13   ultimately, their business fails. (Dkt. 33 ¶ ¶ 29-30.) Faced with this prospect, some companies

14   turn to a questionable method of growing their user base called "spam-viting" or "growth

15   hacking." (Dkt. 33 ¶ 30.) In a growth hacking scheme, companies take users' contact lists and

16   use them to send computer-generated invitation messages to

17   the users' friends and family, often without the users'

18   knowledge. (Dkt. 33 ¶ ¶ 28-30.)

19       Life360, a social networking app for smartphones

20   aimed at keeping families and groups of friends connected,

21   (Dkt. 33 ¶ 14; Hulls Declaration ¶ 2), uses just such a model.

22   (Dkt. 33 ¶ ¶ 4, 15.) Here's how it works: When a user signs up

23   for Life360, the app presents him with a full-screen message

24   that reads "Want to see others on your map?" The screen

25   offers a large "Yes" button and a small, faint "Nah" button.

26   (Dkt. 33 ¶ 18; Hulls Declaration ¶ 6.) After the user clicks

27

28



"Yes," Life360 roots through his contact list and comes up with a list of "Recommended" contacts, preselected with checkmarks. (Dkt. 33 ¶ 19; Hulls Declaration ¶ 7.) The only button on



the screen reads "Invite," and there is no obvious way for the user to proceed without selecting that button. (Dkt. 33 ¶ 19; *see also* Hulls Declaration ¶¶ 8-9.)

Immediately after the user presses the "Invite" button, Life360 automatically and without further instruction from the user transmits the preselected contacts' names and phone numbers to a Life360 server. (Dkt. 33 ¶ 21; Hulls Declaration ¶ 10.) Using that information, Life360's computer system, not the user, drafts a text message to each contact, which greets the individual by name and provides a hyperlink to the Life360 mobile application, along with an exhortation to "check this out!" (Dkt. 33 ¶ 35; Hulls Declaration ¶ 11.) Life360's spam texting system then sends the computer-generated text message to each contact from a "short-code," a five-digit telephone number often used in high-volume text message marketing campaigns. (Dkt. 33 ¶ 23.) The text message does not include the name or mobile phone number of the user who provided the contact's information to Life360, nor does it include any indication as to whom the message is from (other than the short code).

Life360 takes affirmative steps to disguise its texting functionality because it knows that consumers generally don't want it to send advertising text messages to their friends and family. (Dkt. 33 ¶ 28.) Its sign-up process makes it appear as though it accesses users' contact lists to look for people who are *already* on its social network, not to send spam text messages and emails to contacts who haven't yet joined. (Dkt. 33 ¶ 27.) Also, when Life360 sends an invitation text, it never shows the user the contents of the message, which are generic in nature, and it doesn't even say that a text message has been sent. (Dkt. 33 ¶¶ 26-27; 31.)

## II. Plaintiff Cour's Experience.

Mr. Cour is not and has never been a Life360 user. (Dkt. 33 ¶ 36; Declaration of Terry Cour II, attached hereto as Exhibit A, ¶ 4.) On February 13, 2016, Life360 sent a text message to Mr. Cour from the short-code 89050 that read, in its entirety, "TJ, check this out! lf360.co/i/g2a5iJaTBOO5[.]" (Dkt. 33 ¶ 35; Cour Declaration ¶¶ 2-3.) Rather than click the link in the text message, Mr. Cour responded "Who is this?" (*Id.*) He received the reply "I'm sorry, but we weren't able to understand your message. Please reply YES, NO, or HELP." (*Id.*) There was no indication in the body of the text message that any of Mr. Cour's family members had, directly or indirectly, caused the message to be sent. Those three text messages form the entirety of Mr. Cour's interaction with Life360 before he filed this lawsuit.

## ARGUMENT

### I. The Court Has Jurisdiction to Hear this Case.

Life360 offers two jurisdictional arguments, both of which can be easily dispensed with. It argues that an arbitration clause prevents the Court from deciding this case on the merits, but it does not even come close to showing that Mr. Cour ever entered into any agreements regarding arbitration or anything else with Life360. Second, it misstates the Supreme Court's holding in *Spokeo, Inc. v. Robins* (a case in which Mr. Cour's counsel represented the respondent) in an attempt to argue that Mr. Cour lacks Article III standing. Both positions are incorrect, and the Court can decide this case on the merits.

### A. Life360's Spamwrap Cannot Bind Mr. Cour to an Arbitration Agreement.

Life360 suggests, in a footnote, that the Court should dismiss Mr. Cour's case for lack of jurisdiction because he purportedly agreed to arbitrate, rather than litigate, his claims against Life360. (Dkt. 39 at 21 n.13.) Although the Supreme Court has issued a number of arbitration-friendly decisions in recent years, the basic contract principles underlying arbitration haven't changed: An agreement to arbitrate is only enforceable to the degree that the contract containing the agreement is enforceable under principles of contract law. *Nguyen v. Barnes & Noble Inc.*,

763 F.3d 1171, 1175 (9th Cir. 2014) ("While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract."). A "party seeking to compel arbitration has the burden under the FAA to show … the existence of a valid, written agreement to arbitrate." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

Life360 claims that there is a binding contract between it and Mr. Cour because it sent Mr. Cour an anonymous spam text message containing a link to a web page that contains another link at the bottom of the page that leads to another page that contains an arbitration clause. (Dkt. 39 at 21 n.13.) But contracts that appear on the bottom of webpages (often called "browsewrap") are not enforceable where the contract is "available via a conspicuous hyperlink on every page of the website but [the website] otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent[.]" *Nguyen*, 763 F.3d at 1178-79. Even worse for Life360, its sending of an unwanted text message containing a chain of links ultimately leading to an arbitration clause doesn't even rise to the level of browsewrap. It's spamwrap, and it's unenforceable as a matter of law.

Like in *Nguyen*, Life360's Terms of Service are only accessible by clicking on a small link on the bottom of its website. But to even get to the website where he could click on the link to view the terms, Mr. Cour would have first had to click the link in the spam text message that Life360 sent him, which both the FTC and the Department of Homeland Security explicitly warn consumers not to do. Bridget Small*, Random Text? Wait, Wait, Don't Click That*, Federal Trade Commission Consumer Information (Feb. 28, 2014), http://1.usa.gov/1sg48hR; Dep't of Homeland Sec., *Protect Myself from Cyber Attacks*, http://1.usa.gov/1TJZLoc (last updated March 4, 2016) ("Do not click on unknown links or answer strange questions sent to your mobile device, regardless of who the sender appears to be."). Neither the amended complaint nor any of Life360's supplementary materials provide any reason to believe that Mr. Cour ever clicked that link, let alone viewed and manifested assent to the Terms of Service or any other contract. There

exists no principle of contract law that allows Life360 to bind Mr. Cour to an arbitration agreement by sending him an unsolicited text message, and Life360's attempt to force arbitration absent any enforceable agreement should be rejected.

### B.   *Spokeo* Does Not Divest this Court of Jurisdiction.

Life360 urges the Court to find that Mr. Cour lacks Article III standing by misreading the Supreme Court's recent decision in *Spokeo, Inc. v. Robins* to hold that "the plaintiff's allegation of a statutory violation alone was insufficient to confer Article III standing upon him." (Dkt. 39 at 11.) *Spokeo* contains no such sweeping holding. *See Errington v. Time Warner Cable Inc.*, No. 2015-CV-02196, 2016 WL 2930696, at *3 (C.D. Cal. May 18, 2016) (noting that *Spokeo* "was expected to resolve whether a plaintiff can rely on a bare statutory violation to establish Article III standing, or whether allegations of actual damage are required" but that the Supreme Court "declined to decide the key standing issue"). Rather, the Court *expressly* "t[ook] no position as to whether the Ninth Circuit's ultimate conclusion—that [the plaintiff] adequately alleged an injury in fact—was correct." *Spokeo*, 136 S. Ct. at 1550. *Spokeo*'s changes to standing jurisprudence are minor, and Mr. Cour has standing today, just as he did when he filed this action.

In *Spokeo*, the Supreme Court left the classic injury in fact analysis largely intact: a plaintiff who asserts federal jurisdiction "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). *Spokeo* clarifies that "particularization" and "concreteness" are separate inquires, and that either tangible or intangible injuries can be concrete. *Id.* at 1549-50. As far as the nature of a concrete injury is concerned, all eight justices agreed that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* at 1549 (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment)); *accord id.* at 1553 (Thomas, J., concurring) ("Congress can create new private rights and authorize private plaintiffs to sue based

simply on the violation of those private rights.") (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)); *id.* at 1554 (Ginsburg, J., dissenting) (agreeing with the majority that "Congress has the authority to confer rights and delineate claims for relief where none existed before"). This power is subject to the familiar rule that being deprived of a "procedural right without some concrete interest that is affected by the deprivation … is insufficient to create Article III standing." *Id.* at 1549 (majority opinion) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)).

In the context of a federal statutory cause of action, "a bare procedural violation" that is "divorced" from the harm Congress was trying to remedy does not result in concrete injury. *Spokeo*, 136 S. Ct. at 1549. The concreteness of an injury defined by a statute is a concern where "the right conferred by statute is procedural rather than substantive." *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016) (citing *Spokeo*, 136 S. Ct. at 1549-50). The statute at issue in *Spokeo*, the Fair Credit Reporting Act, arguably raises this problem because it requires consumer credit reporting agencies to "follow reasonable *procedures*" to ensure accuracy of credit reports. *Id.* (emphasis added). The portion of the TCPA that prohibits autodialed calls, by contrast, does not require telemarketers to adopt certain procedures, but instead prohibits specific actions directed toward individual consumers. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The [TCPA] bans certain *practices* invasive of privacy[.]") (emphasis added). This kind of substantive statutory right cannot, by its nature, implicate the "bare procedural violation" problem that *Spokeo* addresses. *See, e.g.*, *Booth*, 2016 WL 3030256, at *5; *Rogers v. Capital One Bank (USA), N.A.*, No. 1:15-CV-4016-TWT, 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016) (holding that violations of the TCPA are concrete injuries); *see also Spokeo*, 136 S. Ct. at 1552 (Thomas, J., concurring) ("[T]he concrete-harm requirement does not apply as rigorously when a private plaintiff seeks to vindicate his own private rights. Our contemporary decisions have not required a plaintiff to assert an actual injury beyond the violation of his personal legal rights to satisfy the 'injury-in-fact' requirement.").

In assessing whether a statute that allows recovery for an intangible harm adequately defines a concrete injury, both history and Congress's judgment play important roles. *Spokeo*, 136 S. Ct. at 1549. As far as history is concerned, an individual's interest in privacy has long been recognized at common law. Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 220 n.1 (1890) (noting that, at the end of the 19th Century, the common law had already recognized a privacy interest for a century and a half). The TCPA furthers this common law privacy interest by providing a federal cause of action to stop telemarketers from "escaping state-law prohibitions on intrusive nuisance calls." *Mims*, 132 S. Ct. at 744.

The Congressional findings accompanying the TCPA repeatedly stress this same privacy-protecting aim:

(5) Unrestricted telemarketing, however, can be an *intrusive invasion of privacy* and, when an emergency or medical assistance telephone line is seized, a risk to public safety.

(6) Many consumers are outraged over the proliferation of *intrusive, nuisance calls* to their homes from telemarketers.

* * * *

(9) Individuals' *privacy rights*, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that *protects the privacy of individuals* and permits legitimate telemarketing practices.

(10) Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a *nuisance and an invasion of privacy*.

* * * *

(12) Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this *nuisance and privacy invasion*.

PL'S OPP. TO DEF'S MOT. TO DISMISS
AND CROSS MOTION FOR PART. SUMM. JUDG.

8

3:16-cv-00805-TEH

Pub. L. 102–243, § 2, 105 Stat. 2394 (1991) (found as a note to 47 U.S.C. § 227) (emphasis added). *See also* 137 Cong. Rec. 30, 821–30, 822 (1991) (statement of Senator Hollings) ("Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall."). Having found that autodialed telemarketing calls "can be an intrusive invasion of privacy" and because "many consumers [were] outraged over the proliferation of intrusive, nuisance telemarketing calls to their homes," Congress "provided complementary means of enforcing the [TCPA]," which includes a private right of action for consumers who received unlawful calls. *Mims*, 132 S. Ct. 740, 745-46 (2012).

Because Life360 acknowledges that Mr. Cour alleged a congressionally defined invasion of privacy, the inquiry should end here. Nevertheless, Life360 objects that Mr. Cour "does not even allege, much less explain, what privacy interest of his was invaded[.]" (Dkt. 39 at 17.) That contention makes little sense. Rule 8(a) does not require plaintiffs to plead detailed legal explanations for why they have standing. *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839 (9th Cir. 2007) (federal notice pleading standard requires only that complaint allege facts to "give[] the defendant sufficient notice of the court's jurisdiction"); *see also Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) ("Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument."). Further, nothing in the *Spokeo* decision suggests that plaintiffs alleging statutory causes of action need to plead any harm other than the one identified by Congress, a body that is "well positioned" to identify intangible harms and whose judgment is "instructive and important." *Spokeo*, 136 S. Ct. at 1549. Congress found that autodialed telemarketing calls to mobile phones constitute an invasion of privacy, and in passing the TCPA, it exercised its "power to define [an] injur[y] and articulate chains of causation that [gave] rise to a case or controversy where none existed before. *Id.* at 1549 (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment)). Mr. Cour does not need to

"allege any *additional* harm beyond the one Congress has identified"—the invasion of privacy resulting from the text message that Life360 sent to him using an autodialer. *See id.* (emphasis in original). He therefore has Article III standing, and this Court has jurisdiction.

## II. Life360's Summary Judgment Motion Is So Cursory that the Court Should Not Consider It.

Life360 styles its motion as a "motion to dismiss, or, in the alternative, for summary judgment," a tactic it uses to play fast-and-loose with the standards required by Rule 8(a) and Rule 56. Life360's moving papers repeatedly request summary judgment without making any attempt to apply the summary judgment standard to the facts at hand, or to advance an argument that there are no disputed material facts. It's nearly impossible to tell which arguments are made in support of summary judgment and which ones support a motion to dismiss. Even Life360's incomplete recitation of the summary judgment standard doesn't appear in the body of its brief, but in a footnote. (Dkt. 39 at 9 n. 7.)

Setting aside that "it is wholly improper to make substantive arguments in a footnote," *Ctr. for Biological Diversity v. Exp.-Imp. Bank of the U.S.*, No. C 12-6325 SBA, 2014 WL 3963203, at *5 (N.D. Cal. Aug. 12, 2014), Life360's vague requests for summary judgment are insufficiently developed for the Court to consider. *See, e.g.*, *Dennin v. Comm'r of Soc. Sec.*, No. 15-CV-03686-SK, 2016 WL 1322993, at *6 (N.D. Cal. Apr. 5, 2016) ("The Court is not required to address conclusory, unsupported arguments") (citing *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008)); *DISH Network, L.L.C. v. Sonicview USA, Inc.*, No. 09-CV-1553-L WVG, 2012 WL 1965279, at *12 (S.D. Cal. May 31, 2012) (denying summary judgment where defendants presented "nothing more than conclusory statements" instead of "explanation, analysis, or evidence"); *see also Bartell v. JPMorgan Chase Bank, NA*, 607 F. App'x 731, 732 (9th Cir. 2015) ("Conclusory statements, tautologies and a couple of citations don't an argument make."). Although a motion to dismiss can be converted to a motion for summary judgment if it relies on facts not alleged in the complaint, the moving party still has to explain *why* it is entitled to summary judgment. Simply requesting summary judgment in a conclusory fashion is not

enough to discharge this burden, even when the moving party would not bear the burden of proof at trial. *See Correa v. City of San Jose*, No. 5:12-CV-05436-HRL, 2015 WL 5559893, at *10 (N.D. Cal. Sept. 16, 2015) (holding that arguments made in a "highly conclusory fashion and without elaboration" do not discharge a defendant's initial summary judgment burden). Further, Life360's failure to argue for summary judgment in its motion precludes it from doing so on reply. *See Rollins v. Dignity Health*, 19 F. Supp. 3d 909, 918 (N.D. Cal. 2013) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.") (Henderson, J.) (quoting *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000)).

Because Life360 does not offer any more than conclusory statements in support of summary judgment, its motion should be treated solely as a motion to dismiss. For the purposes of the Life360's affirmative motion, the Court should "accept[] all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party," *Narayanan v. British Airways*, 747 F.3d 1125, 1127 (9th Cir. 2014). As explained in detail below, Life360 cannot demonstrate that Mr. Cour fails to state a claim, and therefore it is not entitled to dismissal.[1]

## III.   Mr. Cour Both Plausibly Alleges a Violation of the TCPA and Is Entitled to Partial Summary Judgment.

Mr. Cour's main claim is that Life360 violated the TCPA when it sent an unsolicited text message to his cellular phone using an "automated telephone dialing system," often called an ATDS or autodialer. "The TCPA states that it 'shall be unlawful' to 'make any call' using an autodialer or an artificial or prerecorded voice, absent certain exceptions, without 'the prior express consent of the called party.'" *In the Matter of Rules & Regulations Implementing the Tel.*

---

[1]   If the Court deems it appropriate to consider Life360's summary judgment motion, then Mr. Cour will require discovery with regard to whether Life360 uses an autodialer. He has filed a contemporaneous motion to that effect under Rule 56(d). *See, e.g., Brae Transp., Inc. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986) (holding that motions under Rule 56(d) (formerly 56(f)) should be filed separately from opposition memoranda).

*Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 ¶ 73 (2015) (quoting 47 U.S.C. § 227(b)(1)) [hereinafter FCC Omnibus Order].[2] The TCPA applies equally to calls and text messages to cellular phones. *Id.* ¶ 107; *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016).

Life360 moves for dismissal on the basis that Mr. Cour does not adequately allege that Life360 used an autodialer or made the text message call he received. However, Mr. Cour's allegations with regard to Life360's autodialer are sufficient to state a claim. Further, not only does the amended complaint adequately allege that Life360 "made" the text message call to Mr. Cour's phone, but the undisputed evidence from the declaration of Life360's CEO, even at this early stage, provides sufficient grounds for the Court to grant summary judgment in favor of Mr. Cour on this issue. Finally, if the Court decides to address Life360's conclusory request for summary judgment (which, as explained above, it should not), a significant piece of its proffered evidence is inadmissible and cannot be considered in any event.

## A. Mr. Cour Adequately Alleges that Life360 Used an Autodialer to Text Him.

Mr. Cour's pleadings are more than sufficient to survive a motion to dismiss on the issue of whether the invitation text came from an autodialer. An automated telephone dialing system, or autodialer, is defined as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Congress intended the autodialer definition to be understood broadly to encompass equipment whose "basic functions … are to dial numbers without human intervention and to dial thousands of numbers in a short period of time." FCC Omnibus Order ¶¶ 15-17. However, the FCC specifically declined to create a "human intervention test by clarifying that a dialer is not an autodialer unless it has the capacity to dial numbers without human intervention." *Id.* ¶ 20. Rather, "[h]ow the human intervention element applies to a particular piece of equipment is specific to each individual piece of equipment … and is

---

[2]     Under the Hobbs Act, 28 U.S.C. § 2342, district courts are bound by a final decision of the FCC and must apply it without passing on its validity. *See Pac. Bell Tel. Co. v. California Pub. Utilities Comm'n*, 621 F.3d 836, 843 n.10 (9th Cir. 2010).

therefore a case-by-case determination." *Id.* ¶ 17.

Here, Mr. Cour alleges that Life360's system receives lists of numbers, then dials them automatically and simultaneously. (Dkt. 33 ¶ 31.) Specifically, when a current user selects the "Invite" button, Life360's app transmits the list of contacts (often preselected by Life360 itself) to its server, where the automatic system fires off text messages to each contact from a "short code." In other words, Life360's dialing equipment "has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." FCC Omnibus Order ¶ 13. Not only that, but it does so using an SMS short code, a strong indication that an autodialer was used. *See, e.g.*, *Mogadam v. Fast Eviction Serv.*, No. SACV 14-01912 JVS, 2015 WL 1534450, at *3 (C.D. Cal. Mar. 30, 2015) (finding that a plaintiff stated a claim where he alleged that a text message "sent from a short-code sending number" and was "commercial, generic, and impersonal in nature"); *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1260 (S.D. Cal. 2012) (denying motion to dismiss where "Plaintiffs have stated that they received a text message from an SMS short code and that the message was sent by a machine with the capacity to store or produce random telephone numbers"). Because Mr. Cour "alleges that the message was sent *en masse* to a host of persons nationwide, and that it was sent from a short code," he has "sufficiently alleged the use of an [autodialer]." *Harnish v. Frankly Co.*, No. 5:14-CV-02321-EJD, 2015 WL 1064442, at *3 (N.D. Cal. Mar. 11, 2015).

Life360's contention that it does not use an autodialer is largely based on the false premise that the lack of human intervention is the *sine qua non* of an autodialer, for which it cites *Glauser v. GroupMe*, No. C 11-2584, 2015 WL 375111 (N.D. Cal. Feb 4, 2015). That case, however, "was decided before the July 2015 FCC order which backed away from the 'human intervention' element[.]" *Sherman v. Yahoo! Inc.*, No. 13CV0041-GPC-WVG, 2015 WL 8757028, at *5 (S.D. Cal. Dec. 14, 2015). Given that "a person will always be a but-for cause of any machine's action," *Glauser*'s "'but-for' type of analysis which focuses on the triggering event leading up to the offending text" is no longer valid. *Id.* Life360 cannot use such logic to

PL'S OPP. TO DEF'S MOT. TO DISMISS
AND CROSS MOTION FOR PART. SUMM. JUDG.

13

3:16-cv-00805-TEH

obtain dismissal here.

Life360's only other argument on the autodialer front is that it only sends texts "at the user's affirmative direction." (Dkt. 39 at 15-16.) But, the fact that a person unwittingly provides a list of numbers to an automatic texting system is not the sort of human intervention required to avoid liability under the TCPA. *See* FCC Omnibus Order ¶ 14 (finding that software that dials automatically from a database of numbers is an autodialer). As explained in more detail below, Life360 *never tells the users that it's sending text messages* purportedly on their behalf. There can be no meaningful human intervention when the humans involved have no way to know what they're doing. Further, to the degree that there's human intervention at all, that intervention is limited to loading a (potentially large) list of numbers into a computer system that then dials the numbers. That's not manual dialing, and it's not enough to render Mr. Cour's allegation that Life360 uses an autodialer implausible.

**B.      Mr. Cour Not Only Plausibly Alleges that Life360 Initiated the Text Message He Received, But the Undisputed Evidence Shows that He Is Entitled to Partial Summary Judgment.**

Although Life360 is evasive about the standard under which its motion should be evaluated, its unfounded claim that one of Mr. Cour's family member's sent the text message at issue does not entitle it to either dismissal or summary judgment. To the contrary, Mr. Cour is entitled to partial summary judgment in his favor on this issue. "Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 954 (9th Cir. 2013). If the moving party "will bear the burden of persuasion at trial, that party must support its motion with credible evidence … that would entitle it to a directed verdict if not controverted at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

Here, the undisputed material facts as set out by the declaration of Life360's CEO prove that Life360 initiated the invitational text message and would entitle Mr. Cour to a directed

verdict if presented at trial. First, an examination of the totality of the circumstances, as required by the FCC's order, shows that Life360's conduct makes it the initiator of the text messages as a matter of law. Second, the district court cases Life360 cites are factually distinguishable and non-binding in any event.

In the TCPA, Congress "put the responsibility for compliance with the law directly on the party that 'makes' or 'initiates' automated … calls." FCC Omnibus Order ¶ 29. Determining whether a party initiated a call requires:

> look[ing] to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA.

*Id.* ¶ 30. In the context of mobile apps that send text messages, the FCC provides additional guidance to clarify these general principles. The FCC's order delineates a spectrum of texting behavior, ranging from situations where an app user is so involved in making the text message call that the app provider is deemed not to have done so, to situations where the minimal involvement of an app user does not absolve the app provider from having made it.

On one end of that spectrum lies YouMail, a mobile app company that allows users to set up auto-reply text messages to be sent in response to a voicemail message. The FCC ruled that YouMail users, not YouMail itself, initiate the text messages because the users "determine[] whether to send the auto-reply text messages, which categories of callers should receive auto-replies, how the user's name should appear in the auto-reply, and whether to include a message with the auto-reply." FCC Omnibus Order ¶ 31. YouMail "exercises no discernible involvement in deciding whether, when, or to whom [a text message] is sent, or what such [a text message] says, nor does it perform related functions, such as pre-setting options in the app, that physically cause auto-replies to be sent." *Id.* ¶ 32.

On the other end of the continuum lies Glide, which the FCC found *is* the initiator of the text messages that it sends. Glide is a mobile app that "automatically sends invitational texts of

PL'S OPP. TO DEF'S MOT. TO DISMISS
AND CROSS MOTION FOR PART. SUMM. JUDG.

15

3:16-cv-00805-TEH

its own choosing to every contact in the app user's contact list with little or no obvious control by the user." *Id.* ¶ 35. The complete absence of user involvement in sending the text makes clear that Glide initiates these text messages and therefore can be held liable under the TCPA.

The dividing line between mobile apps where the app provider is deemed to have initiated text messages and mobile apps where the user is deemed to have done so sits somewhere between YouMail and Glide. The FCC's examination of a third app—TextMe— however, helps narrow the spectrum further. Unlike YouMail users, TextMe users do not control the content of the text messages that are sent out. But unlike Glide users, in order to send text messages, a TextMe user must:

> (1) tap a button that reads "invite your friends"; (2) choose whether to "invite all their friends or [] individually select contacts"; and (3) choose to send the invitational text message by selecting another button.

*Id.* ¶ 36. The texts identify the user sending the message and provide a link to download the TextMe app. *Id.* ¶ 36 n. 139. "These affirmative choices by the app user" led the FCC to "conclude that the app user and not TextMe is the maker of the invitational text message." *Id.* ¶ 37.

If, as Life360 argues, its app were "materially indistinguishable" from TextMe, then Life360 might be correct that it does not initiate the text messages at issue here. However, examining the totality of the facts and circumstances, Life360's app sits significantly closer to the Glide end of the spectrum than TextMe does because the "affirmative choices by the app user" that the FCC found persuasive in the TextMe case are absent here. *See id.* ¶ 37. TextMe users must proactively seek out the "Invite" functionality to send a text message, and they must make an affirmative choice about who will receive the text. *Id.* ¶¶ 37-37. Life360 users, on the other hand, are presented with the "Invite" screen as part of the sign-up process—they can't proceed without it—and Life360 pre-selects text message recipients, which users must affirmatively deselect if they want to avoid sending text messages. (Hulls Declaration ¶¶ 7-9.) And quite critically, TextMe users must choose to send invitations *specifically by text message*

before a text message is sent, while Life360 never tells its users that text messaging is involved at all in the invite process. *Compare* TextMe, Inc's Petition for Expedited Declaratory Ruling and Clarification, at 5, http://goo.gl/rpI1cv *with* (Hulls Declaration ¶¶ 9-10). Upon clicking the "Invite" button, Life360 determines whether the preselected contacts have telephone numbers associated with them, composes a text message, and sends that text messages from its own short-code phone number without any indication to the user that it will do any of these things. (*See* Hulls Declaration ¶¶ 9-10; Cour Declaration ¶ 2.) Unlike TextMe, Life360 therefore "makes" the text message calls that its app generates, and it initiated the text message that Mr. Cour received.

The only other authority Life360 provides in support of its position are two district court cases, which—unlike the FCC's Order—are non-binding, and in any event, are readily distinguishable from this case. In *McKenna v. WhisperText*, which is on appeal, the court refused to find that the defendant initiated the text messages because of the plaintiff's "prior allegations about the need for human intervention[.]" *McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 5264750, at *5 (N.D. Cal. Sept. 9, 2015). Those prior allegations, addressed in an order not cited by Life360, make clear that the defendant informed users that their actions would result in text messages being sent. *McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 428728, at *2 (N.D. Cal. Jan. 30, 2015) ("Whenever a new user downloads the Whisper app from WhisperText, the message 'Whisper will text your friends for you' appears on the screen automatically."). Similarly, in *Huricks v. Shopkick, Inc.*, the defendant presented evidence that "on the screen shown before the users were given the option to cause the invitations to be sent," the app displayed "the number of invitations that would be sent and whether by text or by another modality." No. C-14-2464 MMC, 2015 WL 5013299, at *4 (N.D. Cal. Aug. 24, 2015).

Despite Life360's repeated insistence that JoBeth Cour (a non-party who Life360 suggests, without evidence, is Mr. Cour's family member), sent the invitation text message to Plaintiff, the undisputed evidence shows that Life360 does not work like the apps in *WhisperText* and *Shopkick*. According to the sworn declaration of Life360's CEO, Christopher Hulls, the

Life360 app "make[s] it clear that when the user pushes the 'Invite' button, her selected contact(s) will receive an invitation to join Life360." (Hulls Declaration ¶ 9). But there is no mention of *how* the invitation will be sent. Indeed, Hulls goes on to swear that "[a]fter the user pushes the "Invite' button, text message invitations are *immediately* sent to the user's selected contacts[.]" (*Id.* ¶ 10) (emphasis added). The screenshots referenced in Hulls's declaration confirm that, unlike *WhisperText*, *Shopkick,* and TextMe, there is no intermediate step by which the user is informed that the invitations will be sent by text message, or that gives the user the option to send an email instead. (*Id.* ¶¶ 9-10.)

That disconnect explains the careful phrasing in Hulls's declaration. Instead of swearing that the Life360 users send text messages, he states, in the passive voice, that "text message invitations are immediately sent" when users invite their contacts. (Hulls Declaration ¶ 10.) In a similar piece of strategic drafting, Hulls declares (in a statement that, as explained below, is inadmissible in any event) that "JoBeth Cour invited TJ Cour to download the App," (Hulls Declaration ¶ 16), not that JoBeth Cour actually sent a text message. Although a Life360's user's actions trigger the functionality that ultimately results in a text message being sent, the user "merely ha[s] some role, however minor, in the causal chain that results in the making of a [text message] call." *See* FCC Omnibus Order ¶ 40.

To put it another way, even if JoBeth Cour unwittingly kicked Life360's hidden texting machine into motion, that doesn't mean she sent a text. A hypothetical illustrates this point well. Suppose that instead of a text message, pressing the "Invite" button meant that the invited contact received a voice phone call where a recorded voice encouraged them to join Life360. It wouldn't make sense to suggest that JoBeth Cour made the hypothetical voice call where she didn't dial the number, wasn't on the line, and didn't even know that clicking the invite button was going to make Life360 ring her entire family. Given that, as Life360 concedes, the TCPA treats voice calls and text messages the same way, (Dkt. 39 at 9), there is no reason to look any differently at the text message invitation that Mr. Cour received.

Viewing these facts in the light most favorable to Life360, a reasonable jury could only find that Life360—not JoBeth Cour or anyone else—sent the invitation text message to Plaintiff, because the undisputed evidence demonstrates conclusively that Life360 never tells its users that the invitation functionality sends text messages. Rather, *Life360 itself* programmed its software to send the text messages automatically from a short code. Mr. Cour is therefore entitled to partial summary judgment on this issue.

### C. If the Court Addresses Life360's Summary Judgment Motion, It Cannot Consider Life360's Proffered Evidence that Mr. Cour's Family Member Sent the Text Message at Issue.

As discussed above, Life360's argument in favor of summary judgment is so conclusory as not to warrant consideration. However, should the Court address Life360's request, it cannot consider the inadmissible portion of its proffered evidence. "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Unauthenticated documents and hearsay cannot be considered for the purposes of summary judgment. *Id.*; *Gamez-Morales v. Pac. Nw. Renal Servs., LLC*, 304 F. App'x 572, 575 (9th Cir. 2008).

The crux of Life360's position, both on the autodialer issue and on the issue of whether it initiated the text message, depends on its contention that one of Mr. Cour's family members sent the text message he received. The facts backing that argument come solely from paragraph 16 and accompanying figure 12 of Life360 CEO Christopher Hulls's declaration, neither of which are admissible.

Hulls's statement in paragraph 16 does not meet the personal knowledge requirement of Civil Rule 56(2), because his declaration does not demonstrate that he has the requisite personal knowledge to testify regarding JoBeth Cour's purported actions. *See, e.g.*, *Martinez v. Am.'s Wholesale Lender*, 446 F. App'x 940, 944 (9th Cir. 2011) (holding that an employee's testimony was not admissible where it "asserted her 'understanding' and 'familiar[ity]' with the stated facts in a conclusory manner that fails to establish her personal knowledge about the relevant events

and documents"); *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) ("Rather than set forth facts that would be admissible in evidence, the affidavit was instead based on inadmissible hearsay. Fed.R.Evid. 802. It was thus an abuse of discretion to consider the information contained [therein]."). Hulls does not state that he was present when JoBeth Cour allegedly invited Mr. Cour to Life360, nor does he give any reason to indicate that he personally reviewed non-hearsay documents to gain such knowledge. Therefore, the statement is inadmissible and cannot be considered.

The screenshot of the invitation in Figure 12 is likewise inadmissible because it is both unauthenticated and hearsay. To be considered at summary judgment, "documents must be authenticated and attached to a declaration wherein the declarant is the person through whom the exhibits could be admitted into evidence." *Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007) (internal quotations omitted). Hulls's declaration does not contain any certification that Life360 made the record in Figure 12 "at or near the time of the occurrence of the relevant matters, that it kept the record[] in the course of a regularly conducted activity, or that it made the record[] by the regularly conducted activity as a regular practice," so it has not been authenticated as a business record under Federal Rule of Evidence 902(11). *Martinez*, 446 F. App'x at 944. Hulls also does not state that he has any personal knowledge about the screenshot so as to establish authenticity under Rule 901(b)(1). Further, since the screenshot is unauthenticated as a business record, it does not fall under the Rule 803(6) exception from the hearsay rule, and is inadmissible as hearsay. To the degree that Hulls's declaration makes a statement about the contents of the inadmissible screenshot, the best evidence rule also prohibits its consideration. *See United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004) (holding that the best evidence rule applies "when a witness seeks to testify about the contents of a writing, recording or photograph without producing the physical item itself-particularly when the witness was not privy to the events those contents describe"). Accordingly, the Court cannot consider the

screenshot in Figure 12 if it decides to address Life360's summary judgment motion.[3]

＊                              ＊                              ＊

Mr. Cour's allegations regarding the capacity of Life360's equipment and its use of a short code are sufficient to state a claim that it used an autodialer. Further, all of the facts Life360 submits in support of dismissing Mr. Cour's claims on the basis that it did not initiate the text message either prove that Life360 *did* initiate the text message or are inadmissible. Accordingly, the Court should deny Life360's motion and grant partial summary judgment to Mr. Cour on the grounds that, based on the undisputed admissible evidence, a reasonable jury could only conclude that Life360 initiated the invitation text message.

## IV.  Mr. Cour Has Standing Under the UCL.

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, "broadly prohibits any unlawful, unfair or fraudulent business act or practice[.]" *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 690 (Ct. App. 2010). A violation of the TCPA "can act as a predicate act for an illegal and/or unfair claim under the UCL." *Sepehry-Fard v. Dep't Stores Nat'l Bank*, No. 13-CV-03131-WHO, 2013 WL 6574774, at *9 (N.D. Cal. Dec. 13, 2013). Life360 seeks dismissal of Mr. Cour's UCL claims on the basis that he has not alleged the requisite injury and that he seeks extraterritorial application of the UCL with regard to the text message that California-based Life360 sent from its headquarters in California. Again, despite the title of Life360's motion, it does not appear to argue for summary judgment on Mr. Cour's UCL claims. The Court should therefore apply the motion to dismiss standard and find that Mr. Cour's pleadings are sufficient to demonstrate standing under the UCL.

First, Mr. Cour has alleged sufficient injury to sue under the UCL. To have standing under the UCL, a plaintiff needs to show economic injury, a requirement that is "qualitatively more restrictive than federal injury in fact, embracing as it does fewer kinds of injuries[.]" *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 886 (Cal. 2011). However, nothing in the text of

---

[3]    Although none of the screenshots in Hulls's declaration are authenticated, Cour does not challenge the admissibility of the statements and screenshots in paragraphs 2 and 6-11.

the statute "suggests the requirement was intended to be quantitatively more difficult to satisfy" than Article III standing." *Id.* Alleging "some specific, identifiable trifle of injury" is sufficient. *Id.* (internal quotations omitted).

In this case, Mr. Cour alleged that he and other consumers suffered injury at the hands of Life360 because the unlawful texts caused wear and tear on their phones, consumed battery life, and used up their cell phone plans. (Dkt. 33 ¶ 59.) An allegation that a plaintiff was "charged for the incoming calls from Defendant to his cellular telephone" is not "conclusory nor implausible" and "is sufficient to demonstrate a loss of money or property" to state a claim under the UCL. *Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937, 947 (C.D. Cal. 2015).

Second, Mr. Cour's claim relates to acts committed *in California*, and California law therefore applies. While the UCL does not apply extraterritorially, it does apply "where the unlawful conduct that forms the basis of the out-of-state plaintiff's claim occurs in California." *Fontenberry v. MV Transp., Inc.*, 984 F. Supp. 2d 1062, 1067 (E.D. Cal. 2013) (citing *Sullivan v. Oracle Corp.*, 254 P.3d 237, 247-49 (Cal. 2011)). Where the defendant is headquartered in California, maintains a principal place of business in California, and the alleged misconduct occurred in California, then the defendant "bears the burden to defeat the presumption that California law applies and to show a compelling reason justifying displacement of California law." *Thomas*, 100 F. Supp. 3d at 946.

Here, Life360 manufactures an extraterritoriality issue by contradicting the complaint and repeating its baseless contention that one of Mr. Cour's family members sent the text message at issue. In fact, as Mr. Cour alleged, Life360 sent the text message from a short code number that it owns. (Dkt. 33 ¶ 23.) It is implausible to conclude that Life360's short code number is anywhere *other* than California, meaning that Life360 texted Mr. Cour in and from California. Further, Life360 programmed its system to send the offending text messages, also from its headquarters in California. (*Id.* ¶¶ 12, 21.) Life360's website (cited in the amended complaint) confirms that its employees—including its software development team—"work in South Beach

(some people might argue it's SOMA), in the best city in the world, San Francisco … 2 blocks from Caltrain and 4 blocks from BART, in the middle of it all." *Jobs*, Life360, https://www.life360.com/jobs/ (last visited June 17, 2016). Life360 offers no compelling reason—indeed no reason at all—that it should be permitted to disclaim the consumer protection laws of the state it so proudly calls home. Mr. Cour therefore has standing to assert his UCL claim.

## CONCLUSION

Plaintiff respectfully requests that this Court enter an Order (1) denying Life360's Motion to Dismiss or, in the Alternative, for Summary Judgment; (2) granting partial summary judgment in favor of Plaintiff on the issue of whether Life360 is the "maker" or "initiator" of the invitational text message; and (3) granting such other and further relief that the Court deems just.

Respectfully submitted,

Dated: June 17, 2016

**TERRY COUR II**, individually and on behalf of all others similarly situated,

By: s/ Rafey S. Balabanian
    One of Plaintiff's Attorneys

Rafey S. Balabanian*
rbalabanian@edelson.com
Todd Logan (SBN – 305912)
tlogan@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Ari J. Scharg*
ascharg@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Admitted *pro hac vice*.

*Attorneys for Plaintiff and the Putative Class*