UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY COUR II,<br><br>    Plaintiff,<br><br>    v.<br><br>LIFE360, INC.,<br><br>    Defendant. | Case No. 16-cv-00805-TEH<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

This matter came before the Court on July 25, 2016, on Defendant Life360, Inc.'s motion to dismiss Plaintiff Terry Cour II's first amended complaint. After carefully considering the parties' written and oral arguments, the Court GRANTS the motion for the reasons discussed below.[1]

**BACKGROUND**

Plaintiff Terry Cour II received the following unwanted text message, sent from "890-50," on February 13, 2016: "TJ, check this out! lf360.co/i/g2a5iJaTBOO5." First Am. Compl. ("FAC") ¶ 35 & Fig. 12. He responded with, "Who is this?" and received another text stating, "I'm sorry, but we weren't able to understand your message. Please reply YES, NO, or HELP." *Id.* at Fig. 12. Cour alleges that he received this message from Defendant Life360, Inc., *id.* ¶ 35, which operates a mobile application that allows users to communicate with and see the location of their friends and family members. *Id.* ¶ 14. He is not and has never been a Life360 user, and he "has never downloaded the Life360 app onto any device." *Id.* ¶ 36.

---

[1] Life360 moves in the alternative for summary judgment, but the Court finds it unnecessary to reach this alternative motion because the issues are suitable for resolution on a motion to dismiss. Accordingly, Cour's motion to stay summary judgment proceedings and to allow discovery under Federal Rule of Civil Procedure 56(d) is DENIED as moot.

1    Cour alleges that the Life360 application works as follows:  After downloading the
2    Life360 application and creating an account, users are asked, "Want to see others on your
3    map?"  *Id.* ¶ 17 & Fig. 3.  Users who click on the "Yes" button are asked permission for
4    Life360 to access their contacts.  *Id.* ¶ 18 & Fig. 4.  Users who allow permission are then
5    brought to a screen to "Add Member[s]," with certain "Recommended" members pre-
6    selected by "an algorithm created by Defendant."  *Id.* ¶ 19 & Fig. 5.  Each
7    "Recommended" contact appears with a checkmark next to it.  *Id.* at Fig. 5.  At the bottom
8    of this screen is an "Invite" button showing the number of selected invitations in
9    parentheses.  *Id*.  Users who press the "Invite" button are then brought to a new screen that
10   says, "Great!  Want to know when they join?"  *Id.* ¶ 20 & Fig. 6.  At no time does Life360
11   indicate to users how invitations will be sent, nor does Life360 inform users of when
12   invitations will be sent.  *Id.* ¶¶ 3-4, 24.  Instead, Life360 "has full control over the content
13   of the text message, whether a text message will be sent and, and [sic] – if a I [sic] text
14   message is to be sent – when, subsequent to the user pressing the 'invite' button, it will be
15   sent."  *Id.* ¶ 24.

16   Cour seeks to represent a class of "[a]ll persons in the United States who received
17   one or more text message calls from (or on behalf of) Life360, Inc."  *Id.* ¶ 39.  The first
18   amended complaint brings two claims: one for violation of the Telephone Consumer
19   Protection Act ("TCPA"), 47 U.S.C. § 227, and a second for violation of California's
20   unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*  Life360 now
21   moves to dismiss both claims.

23   **LEGAL STANDARD**
24   Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a
25   plaintiff's allegations fail "to state a claim upon which relief can be granted."  To survive a
26   motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is
27   plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
28   Plausibility does not equate to probability, but it requires "more than a sheer possibility

that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In ruling on a motion to dismiss, courts must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**DISCUSSION**

**I.     Article III Standing**

Before addressing the merits of Cour's claims, the Court must first consider Life360's argument that Cour has failed to allege a concrete injury, which, if true, would require that the case be dismissed for lack of standing.[2] Article III standing requires that a plaintiff "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The "injury in fact must be both concrete *and* particularized." *Id.* at 1548. The Supreme Court recently made clear that, "Article III standing requires a concrete injury even in the context of a statutory violation," and a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. That is, a plaintiff cannot "allege a bare

---

[2] In a footnote in its moving papers, Life360 also argued that the case must be dismissed because Cour must arbitrate rather than litigate his claims. Mot. at 21 n.13. However, Life360 abandoned that argument in its reply, perhaps acknowledging the difficulty of proving that Cour should be bound by Life360's terms of service when there is no basis to conclude that Cour, who allegedly never signed up for Life360's services, ever reviewed or had reason to review those terms.

procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.*

Here, however, Cour has not simply alleged a procedural violation; instead, he relies on an allegation that he was harmed because Life360 invaded his privacy. FAC ¶ 53. On the standing question, this case is indistinguishable from *Meyer v. Bebe Stores, Inc.*, in which the plaintiff alleged that she received a single unsolicited text message from the defendant and "alleged an invasion of privacy." No. 14-cv-00267-YGR, 2015 WL 431148, at *1-2 (N.D. Cal. Feb. 2, 2015). The court held that this was sufficient to meet Article III standing requirements even though the plaintiff did "not allege she incurred any carrier charges for the specific text message at issue." *Id.* at *2.

Cour relies on two other cases that have also found concrete injuries based on alleged violations of the TCPA: *Rogers v. Capital One Bank (USA), N.A.*, No. 1:15-CV-4016-TWT, 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016) (finding concrete injury where the plaintiffs alleged that "Defendant made unwanted phone calls to their cell phone numbers"), and *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2016 WL 3030256, at *5 (W.D. Wash. May 24, 2016) (finding concrete injury in the form of "waste[d] time answering or otherwise addressing widespread robocalls"). Life360 attempts to distinguish these cases on grounds that the alleged conduct there was more pervasive – "widespread robocalls" in *Booth*, *id.*, and "at least 40 calls" to one plaintiff's cell phone in *Rogers*, 2016 WL 3162592, at *1. However, such distinctions go only to the extent of the injury, not whether there was a concrete injury at all. Indeed, in *Rogers*, another plaintiff allegedly received only two unwanted calls, *id.*, and the Eleventh Circuit case relied on by the court found standing where the plaintiff allegedly received only one unwanted fax message, *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir.2015). In light of these authorities, the Court rejects Life360's argument that Cour has failed to allege a concrete injury sufficient to confer Article III standing.

//
//

4

## II. TCPA Claim

The Court next considers whether Cour has stated a claim under the TCPA, which makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). A text message is a "call" within the meaning of this statute. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009).

Life360 argues that Cour has failed to state a TCPA claim because his allegations do not establish that Life360 "made" the unwanted call or used an "automatic telephone dialing system." 47 U.S.C. § 227(b)(1)(A). The Federal Communications Commission ("FCC") recently examined these and other issues in *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961 (2015). The FCC explained that it looks to "the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." *Id.* ¶ 30.

Of particular relevance to this case, the FCC considered whether two companies, TextMe and Glide, "make" calls as defined by the TCPA. The FCC concluded that Glide "makes" calls when it "automatically sends invitational texts of its own choosing to every contact in the app user's contact list with little or no obvious control by the user." *Id.* ¶ 35. Under these circumstances, the FCC found, "the app user plays no discernible role in deciding whether to send the invitational text messages, to whom to send them, or what to say in them." *Id.*

TextMe, by contrast, does not automatically send invitational texts. Instead, before an invitational text is sent, "[a]n app user must: (1) tap a button that reads 'invite your friends'; (2) choose whether to 'invite all their friends or [] individually select contacts';

United States District Court
Northern District of California

United States District Court
Northern District of California

1  and (3) choose to send the invitational text message by selecting another button." *Id.* ¶ 36.

2  The FCC concluded that:

> These affirmative choices by the app user lead us to conclude that the app user and not TextMe is the maker of the invitational text message. While we agree with commenters that TextMe's control of the content of the invitational text message is a reason for concern, and take into account the goals and purposes of the TCPA, we conclude that the app user's actions and choices effectively program the cloud-based dialer to such an extent that he or she is so involved in the making of the call as to be deemed the initiator of the call. . . . TextMe is not the maker or initiator of the invitational text messages because it is not programming its cloud-based dialer to dial any call, but "merely ha[s] some role, however minor, in the causal chain that results in the making of a telephone call."

*Id.* ¶ 37 (footnotes omitted).

Both parties urge this Court to follow the FCC's ruling, but they disagree over its application. Cour asserts that Life360 is similar to Glide, but this Court disagrees. The only affirmative step by the user of the Glide app is to allow Glide to access his or her contacts. Glide then decides to send invitational text messages to all such contacts; the user plays no role at all in deciding which of his or her contacts should receive an invitation. Here, by contrast, Life360 users choose which of their contacts should receive an invitation and then press an "invite" button before invitations are sent.

Life360 is therefore much more similar to TextMe. The principal difference between the two applications is that Life360 is not alleged to inform the app user how the selected contacts will be invited – i.e., whether they will receive a text message or be notified in some other way. Another court in this district considered a similar application in *Glauser v. GroupMe, Inc.*, No. C11-2584 PJH, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015). The court assumed that the GroupMe app user, known as a "group creator," never asked GroupMe to send welcome texts and was never informed that text messages would be sent. *Id.* The court nonetheless concluded that there could be no violation under the TCPA because the welcome texts "were triggered" when GroupMe obtained the telephone numbers of newly added group members from the actions of the group creator, and the texts were therefore "sent to plaintiff as a direct response to the intervention of . . .

[the] group creator." *Id.*  This Court agrees that it makes no difference, for purposes of determining who "makes" a call under the TCPA, whether an application informs the user how invitations will be sent.  The goal of the TCPA is to prevent invasion of privacy, *Satterfield*, 569 F.3d at 954, and the person who chooses to send an unwanted invitation is responsible for invading the recipient's privacy even if that person does not know how the invitation will be sent.

As Cour correctly observes, two other courts in this district found no TCPA liability where defendants did inform users that invitations would be sent via text message.  However, neither court focused on that characteristic as a decisive factor.  To the contrary, the key factor in *McKenna v. WhisperText* was the "human intervention" that resulted from the fact that "the Whisper App [could] send SMS invitations only at the user's affirmative direction to recipients selected by the user." No. 5:14-cv-00424-PSG, 2015 WL 5264750, at *2-4 (N.D. Cal. Sept. 9, 2015) (internal quotations marks and citation omitted).  The court's decision did not even mention that users were informed that messages would be sent by text, an allegation that was discussed in an order dismissing a prior version of the complaint. *McKenna v. WhisperText*, No 5:14-cv-00424-PSG, 2015 WL 428728, at *2 (N.D. Cal. Jan. 30, 2015).  Likewise, while the court in *Huricks v. Shopkick, Inc.* concluded that the undisputed evidence showed that users were told how invitations would be sent to selected contacts (i.e., by text, email, or Facebook), the court did not indicate whether this was a dispositive factor in its analysis. No. C-14-2464-MMC, 2015 WL 5013299, at *4 (N.D. Cal. Aug. 24, 2015).   This Court is therefore not persuaded that either of these cases warrants a finding that Life360 is the maker of the calls at issue here.

Cour also points to another difference between Life360 and TextMe: that Life 360 initially automatically pre-selects certain contacts for the user to invite, while TextMe does not.  This difference is immaterial.  Prior to reaching the screen on which the contacts have been pre-selected, the Life360 user must first indicate a willingness to share contacts with the app and, upon answering that question in the affirmative, has the option to de-select any contacts whom the user does not want to invite – and, as Cour's counsel conceded at

7

oral argument, can choose to de-select all of the pre-selected contacts so as not to invite anyone. Invitations are not sent until the user presses an "invite" button, and they are only sent to those contacts selected by the user. As the FCC found regarding TextMe, these "affirmative choices by the app user" lead this Court to conclude that it is the app user who initiates the invitation and, therefore, is the maker of the call. 30 F.C.C. Rcd. 7961 ¶ 37. Life360 is not the maker of the call and, consequently, cannot be liable under the TCPA.[3]

Accordingly, the Court GRANTS Life360's motion to dismiss Cour's TCPA claim and DENIES Cour's corresponding motion for partial summary judgment.

### III.  UCL Claim

At oral argument, Cour's counsel conceded that Cour's UCL claim should be dismissed if the Court dismissed his TCPA claim. Having dismissed the TCPA claim, the Court therefore also GRANTS dismissal of the UCL claim.

### CONCLUSION

For all of the above reasons, Life360's motion to dismiss the first amended complaint is GRANTED. Dismissal is with prejudice because, as Cour's counsel acknowledged at oral argument, leave to amend would be futile. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: 07/28/16

_____
THELTON E. HENDERSON
United States District Judge

---

[3] Because this conclusion is sufficient to dismiss Cour's TCPA claim, the Court does not address Life360's separate contention that dismissal is appropriate because Life360 does not use an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1).